GEORGE W. GERRISH

*v.*

HUGH MAHER.

1. AGENT—*extent of his authority.* Where an agent is employed merely to carry out and perform a contract already made by his principal, he is not authorized to change the contract, or to make a new one.

2. Where a party sold land to another, to be paid for part in cash and part on time, the cash payment to be made, and the deferred payments secured by trust deed, when the vendor should deliver a warranty deed,

and an abstract showing good title to the purchaser, and the agent of the vendor, by his direction, tendered such deed and abstract to the purchaser, and demanded performance of the contract, and the latter failed to perform, and afterwards claimed that the agent agreed to give him further time: *Held*, that the agent had no authority to give any extension of time, his authority being simply to perform the contract already made, and not to make a new one.

3. PERFORMANCE OF CONTRACT—*when acts to be concurrently performed.* Where a contract for the sale of land provides for the payment of a portion of the purchase money upon the delivery of a deed for the premises, and an abstract showing good title thereto, and that the balance of the purchase money shall be secured by notes and a mortgage or deed of trust, the delivery of the deed, on the one side, and the payment of the first installment and the delivery of the notes and deed of trust, on the other, are concurrent acts, to be mutually performed by the parties at one and the same time, and neither can be required to proceed before the other performs, or offers to perform, on his part.

4. And as a general rule, subject to some exceptions, either party desiring to place the other in default, must perform, or offer to perform, on his part; but an offer to perform by one party is not necessary when, at the time for performance, it is not in the power of the other to perform, or he unconditionally refuses to perform.

5. SAME—*effect of failure in, on the rights of the party in default.* When a contract for the sale of land provides for the payment of a part of the purchase money, and the execution and delivery of notes secured by a deed of trust for the balance, upon the delivery of a warranty deed for the land, and an abstract showing good title thereto, and no particular time is fixed by the contract for the performance of these concurrent acts, and the parties afterwards agree upon a particular time and place at which to meet and perform, and one of them goes to the appointed place at the appointed time, prepared to perform on his part, and the other one fails to go, the one so failing waives all right to afterwards insist upon the performance of the contract, or the recovery of damages for the breach of it.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

Messrs. MILLER & FROST, for the appellant.

Messrs. MONROE, BISBEE & GIBBS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is claimed that appellant agreed to sell to appellee 72 acres of land, near the city of Chicago, for the sum of $36,250, of which $500 was paid in hand, and one-fourth of the balance to be paid on the delivery of a warranty deed, and an abstract showing good title, and the balance in three equal annual installments, with interest thereon at the rate of six per cent per annum. The suit was to recover damages for an alleged breach of the contract, by a refusal of appellant to convey the land according to the agreement. An optional contract was executed by appellant to appellee in July, 1868, and it is claimed, in the following August, a further agreement was executed, by a firm of land agents, on behalf of appellant. On the trial in the court below, appellee recovered a judgment for $16,700, as damages for the alleged breach. From that judgment defendant appeals to this court, and urges, as grounds of reversal, that the evidence does not sustain the verdict, and the misdirection of the jury by the court, and the refusal to give proper instructions.

It seems to be conceded that on the 13th day of September, 1868, Franklin Tuxbury, on behalf of George W. Tuxbury, with whom appellant had an optional contract for the purchase of this property, and from whom he was to receive title, arrived in Chicago, with the title deeds and papers, for the purpose of consummating the trade, delivering the deeds, receiving the first installment of the purchase money, and the security for the unpaid portion, according to the terms of the proposal signed by appellant. One Hancock acted for appellant in the matter. There seems, however, to be no material difference in the terms of the two written contracts, except one was optional and the other without condition.

On the 14th of September, the parties met at the office of Thompson and Fowler, the land agents. The deeds and

papers were produced, and Tuxbury testifies they were exam-
ined by appellee, and no objection was made by him. Appel-
lee testified that he desired the deeds to be entered on the
abstract. It appears that Chase & Bros., who were preparing
abstracts, received the deeds for the purpose of noting these
conveyances on the abstracts, on the 15th, and returned them
on the 18th, and Tuxbury testifies that he, on that day, when
he received back the deeds, learned that appellee had received
the abstract; but he testifies that he obtained the abstract on
the 19th, which was on Saturday. He says he took it imme-
diately to his attorneys to have it examined, and the papers
made out if the abstract was correct and the title perfect.
That it was two or three days before the attorneys reported
on the abstract. He thinks it was on the 24th of the month.
They had noted defects on the abstract. Tuxbury swears
that he and Hancock urged appellee to close the matter at
various times, but it was not done.

On the 24th of the month a deed was sent to Springfield,
to obtain a certificate from the Secretary of State, authen-
ticating the fact that a commissioner in New York, before
whom the acknowledgment had been taken, was, at the time,
duly appointed, and properly acting as such. The deed was
returned, on the morning of the 28th, with the certificate,
and the objection thus removed. On that day, in the fore-
noon, Tuxbury notified appellee and Hancock that the matter
must be closed by two o'clock in the afternoon, and that it
was probable that he would get a telegram at any time from
his brother, directing him to break off the negotiations, and
return, and two o'clock was fixed as the time for the meeting
to close it up, and, as Tuxbury and Hancock swear, appellee's
office was agreed upon as the place, but he says it was to be at
the office of his attorneys. At the appointed time, Tuxbury
and Hancock went to appellee's office, and remained there for
some time afterwards, but appellee did not meet them, and
Tuxbury declared the contract at an end. At two o'clock,
he had received a telegram from his brother saying, that if

the money was not paid by two o'clock of that day not to deliver the papers.

By the terms of this agreement, the delivery of the deed on the one side, and the payment of the first installment, and the delivery of the notes and trust deed, by the other, were concurrent acts, to be mutually performed by the parties, at one and the same time. Neither could be required, under the agreement, to proceed before the other performed, or offered to perform, on his part. The contract was so framed, and nothing else can be required under it; and as a general rule, subject to some exceptions, either party desiring to place the other in default, must perform, or offer to perform, in all such cases. If one party unconditionally refuses, or it appears that it is out of his power, when the time arrives, then a performance, or a tender of performance, by the other party, is unnecessary. These, and such like cases, form an exception to, but do not abrogate the rule. Whether the parties are able to perform, are ready and willing and offer to perform, are, therefore, usually important questions to be determined in this character of actions.

When the evidence is considered, we think there can be no reasonable doubt that appellant, through his agents, Tuxbury and Hancock, had the power, and was ready and willing, and offered, to perform his part of the contract, on the forenoon of the 28th of September, the day that negotiations were broken off and ceased. The abstract then showed good title, and Tuxbury had a deed in his possession, ready to deliver from appellant to appellee, and a deed from his brother to appellee, ready to be delivered and recorded. Of these facts there can be no doubt, and there seems to be none that he had been willing to deliver them for two weeks previous to that time; but, for some reason, not clearly explained, ten days seem to have been consumed in noting some five or six deeds on the abstract, and in obtaining the opinion of counsel as to the sufficiency of the title. At the end of that time, a technical objection was raised that a certificate of the

official character of a commissioner, who had certified the acknowledgment of one of the deeds, was interposed. The deed was then sent to Springfield, the certificate procured, and the deed returned by the morning of the 28th. The parties must have felt assured, almost to a certainty, that this certificate would be had when the deed should be returned; and this want of proof of the official character of the officer need not have prevented appellee from preparing himself for the performance of his part of the agreement.

It appears that appellant, by his agent Tuxbury, at ten o'clock in the forenoon of that day, offered to deliver the deeds, and receive the money and securities; but it is insisted that, owing to a difference between appellee and Hancock, as to the rate of interest the deferred payments should bear, the notes and trust deed had to be altered, which prevented the consummation of the agreement at that time. It appears that, at that meeting, Tuxbury notified appellee that he had received a letter from his brother, saying that appellant was at his mercy, and informing him that he was liable, at any time, to get a telegram directing him to close all further negotiations, and return, and at the same time urged that the matter be closed at once; but we infer that time was extended until two o'clock, subject to orders that Tuxbury might, in the meantime, receive from his brother to close and break off further negotiations.

As we understand the matter, George W. Tuxbury, who owned the land, had sold it to appellant, with an option to refuse to take it in thirty days; and, although he had elected to take it, and make the payments, the time had then expired, as had appellee's, and the owner had the right to insist upon appellant making immediate payment, or, failing to do so, to end the contract; and this, too, without the slightest reference to the trade between appellant and appellee; and Franklin Tuxbury was acting as the agent of his brother to deliver the deed to Hancock for appellant, and as the agent of the latter to deliver his deed to appellee, when the latter should make

payment and deliver the securities to Tuxbury. He, then, was bound to act within the scope of his authority, and notified the other parties that his power was liable to come to an end within an hour; and when the hour of two in the afternoon was fixed, all parties must have known that, before that hour arrived, Tuxbury's power might be at an end. It can not be claimed that Tuxbury had power, in the face of these facts, to unconditionally extend the time even until the hour of two. There is no evidence that he had any irrevocable power in the matter; and, in the absence of proof to the contrary, he will be presumed to have had power only to carry out the contract according to its terms, and not to make new or binding contracts; but his extension of time does not seem to have been repudiated, but rather to have been approved by his principal, as he was instructed, if the money was not paid by two o'clock of the 28th, to withdraw the papers, and end the matter. There was not, nor could there have been, so far as this evidence discloses, a binding unconditional extension of the time.

This, appellee manifestly knew, as he was fully informed that Tuxbury's power was liable to be withdrawn before the hour arrived. He also knew that appellant was in the power of the holder of the legal title, and could only perform when appellee performed, and that Hancock could not be invested with power to extend the time beyond the time appellant's vendor might see proper to give. No one could reasonably suppose that appellant would authorize an agent to do so under the circumstances, all of which seem to have been fully known to appellee. There is, therefore, no reason for the claim of appellee that the extension of the time until two o'clock was unconditional. It was error for the court to instruct the jury that they might so find, as there was no evidence to warrant such an inference. Instructions must be supported by evidence that tends to prove the propositions they embody. Such an instruction was calculated to mislead, and should not have been given.

The evidence fails to show that appellee, at any time within the two weeks efforts were being made to close up the matter, tendered the money, notes and trust deed, or showed that he was actually able or willing to perform. It may be inferred that he was expecting one Smith to make the payments, and to give his notes for the purchase money, although appellee swears he had the money for the first payment in bank. He at no time, so far as we can see, even demanded that the deeds should be delivered, and the matter closed. On the contrary, if the evidence is to be credited, he was repeatedly urged to close up the matter.

But it is urged, that the case of *Smith* v. *Lamb*, 26 Ill. 396, controls this case. That case is wholly unlike this. There, the vendor had no title or pretense of any power to convey title, according to the terms of his agreement; but here, appellant, although not the absolute owner of the legal title, had a deed to him from the owner, ready to be delivered and tendered to appellee, to take effect on his performing his part of the contract. In that case, there was no pretense of power to pass any title to the vendee. In this, the cases are the poles apart.

The only remaining question on this branch of the case is, whether the change in the rate of interest, at the instance of Hancock, which involved the necessity of changing the papers, formed such an excuse as dispensed with the necessity of a tender of the money by appellee. We think it did not. He knew that the extension of time for the closing of the matter was dependent upon the continuance of the power of Tuxbury to act till the time named. Had he been ready with the money, and tendered it, and had the trust deed ready by two o'clock, the contract would have been consummated. The telegram directed the contract to be ended, unless the money was paid by two o'clock, and the urgency in the whole matter seemed to be for the payment of the money; but be this as it may, it would seem that there was ample time for the copying of a deed of trust already drawn, with the change

of a single word where it occurred in the deed; or, if appellee had been eager to perform the contract, the deed could have been changed by erasing one word, and interlining the other, so far as necessary, and noting the change, as is frequently done, and to which there is no legal objection. Had appellee been anxious to carry out the contract, this might, together with drawing new notes, have been done within less than half an hour, and he could have made an effectual tender if he was possessed of the requisite amount of money for the purpose.

The evidence tends strongly to prove that the meeting at two o'clock was fixed for appellee's office, and that Tuxbury and Hancock went there in pursuance to the agreement, and they so swear; but appellee swears it was to be at Perkins' office, and that he went there. If the meeting was to have been at appellee's office, then he, by failing to be there as agreed, waived all right to insist upon the performance of the contract or the recovery of damages for a breach, as it was his breach, and not appellant's. Tuxbury and Hancock went there, at the time, to perform the contract, and remained for about a quarter of an hour after two, awaiting the arrival of appellee; and Tuxbury swears that he went there to receive the money and securities, and to deliver the deeds. If such was the agreement, then appellee failed to comply with his part of the agreement, and appellant's agents had the undoubted right to declare the contract at an end; or, rather, Tuxbury had the right to terminate appellant's contract with his brother, and as appellee's and appellant's agreement was dependent on it, this fell with it.

In so far as the instructions in the case conflict with the views here expressed, they were improperly given, and so far as those which were refused conform, they should have been given.

The judgment of the court below is reversed.

*Judgment reversed.*