# The Wabash, St. Louis and Pacific Railway Company

*v.*

# Isaac McDougall *et al.*

*Filed at Springfield September 27, 1888.*

| 126 | 111 |
| 41a | 235 |
| 126 | 111 |
| 147 | 334 |
| 126 | 111 |
| 150 | 379 |
| 154 | 198 |
| 44a | 399 |
| 44a | 534 |
| 126 | 111 |
| 174 | 262 |
| 126 | 111 |
| h188 | 6583 |
| 126 | 111 |
| 194 | 9 95 |
| 194 | 1579 |
| 126 | 111 |
| 199 | 9115 |
| 126 | 111 |
| 206 | 1183 |

1. EMINENT DOMAIN—*measure of damages—as to land not taken.* In an original proceeding to condemn land by a railway company for right of way, the measure of damages to land not taken is the difference between the value of the land, as a whole, before and after the construction of the road, built according to the plan proposed.

2. SAME—*subsequent damages—occasioned by a change in the plan of the construction of a railroad—as, the substitution of a trestle bridge for an embankment.* If, after damages have been assessed in such case, or settled by agreement, a change in the plan of construction of the road is made, occasioning further damages, the owner may demand a new assessment as to such increased damages.

3. On a proceeding to have damages assessed which are caused to land by a change in the construction of a railroad, there can be no recovery of damages growing out of a wrongful or negligent act of the railway company in making the change. In such case, the proper measure of damages is the increased or additional injury caused by the alteration.

4. A railway company, after having made a change in the construction of its road, sought a further condemnation against a purchaser from the prior owner, who was not entitled to compensation for the original taking of land for right of way. The then owner claimed damages to adjoining lands on account of the change of the plan of the road, to avoid which claim, the petitioner, on the trial, offered to prove that the change from an embankment to a trestle bridge, made nearly three years before, was but temporary, until such time as it could be ascertained, from the action of the water of a stream, and its effect, what change should be made,—whether back to the original plan or not,— which the court refused to admit: *Held,* that the proposed evidence was properly refused.

5. In such case, the company having built a trestle bridge in the place where originally it had an embankment, which had been washed out, and maintained the bridge for nearly three years, and having filed its petition for a second condemnation, making therein no averment of any proposed change by restoring the embankment, it was not competent for the petitioner to prove, on the trial, that the company did not intend the opening in the embankment to remain permanently. The

company should have amended its petition by showing that it proposed to re-adopt the original plan of construction, by plans to be incorporated into the record, when the evidence might have been pertinent.

6. In a proceeding for the assessment of damages to land not taken, but damaged, by a change in the construction of the road by the erection of a bridge over an opening in an embankment caused by a flood in a river, the court allowed the defendant to prove, that by reason of the opening in the grade a small house on the land below was carried off by the water, and a levee built by him was destroyed: *Held,* that the evidence was calculated to lead the jury to believe that such injuries were proper elements of damages, and therefore was improperly admitted. If the object of the evidence was to show the force with which the water passed through the opening, it should have been so limited when offered.

7. Where the land owner, in a proceeding to condemn land, after a change in the plan of the road and its construction, by putting in a bridge where there had before been a heavy embankment, it is error to refuse to allow the petitioner to show that the alteration benefited the defendant's land above the grade of the river, if the land owner, by his cross-petition, claims damages to his other lands, some of which are above and some below the place where the change is made.

8. Same—*damages resulting from failure to maintain an embankment as a levee against overflow of a river.* Where a railway company has built an embankment, which serves as a part of a levee to prevent the overflow of lands, not, however, under any contract with the owners thereof, and the company afterward changes the plan of its road by placing a trestle bridge in the place of its embankment washed out, the land owner will have no claim for damages to his land for the failure of the company to maintain and keep up such embankment.

9. Same—*authority of attorney to bind petitioner by stipulation.* An attorney employed by a railway company to procure a condemnation of land for a right of way, can not bind the petitioner by his agreement or stipulation as to the plan of constructing the road, in the absence of special authority to do so.

10. After the construction of a railroad near a river, a part of its embankment was carried away by a flood, and a bridge or trestle work was substituted in the place of such embankment, and the road was so operated for nearly three years, when a condemnation was sought against the purchaser from the former owner. The owner filed his cross-petition, claiming damage to his land not taken, both above and below the line of the road, caused by the alteration in the plan of the road. On the trial, the petitioner's attorney, without proof of authority, filed an agreement of the company, executed by him, to restore the embankment according to the original plan, and to maintain the same,

which, on defendant's motion, was stricken from the files: *Held,* that the action of the court was proper.

11. SAME—*sufficiency of the verdict.* In a proceeding to condemn lands for a railroad, in which damages are claimed in respect to lands not taken, the verdict need not describe the lands for which damages are awarded, and may state the amount assessed in a gross sum.

12. PRACTICE—*offer by the court to admit evidence after having improperly excluded it.* After the exclusion of proper evidence, upon the withdrawal of objection thereto, the court offered to allow the evidence, which the party failed to introduce. There was nothing to show why the same could not have been introduced as well after as before the exclusion: *Held,* that the party could not complain of the ruling of the court in excluding the evidence in the first instance.

WRIT OF ERROR to the Circuit Court of Menard county; the Hon. CYRUS EPLER, Judge, presiding.

This is a condemnation proceeding, by which plaintiff in error seeks to obtain right of way over defendants' land. Before the filing of the petition, another company had constructed and put in operation a railroad over the land sought to be condemned, which railroad plaintiff had purchased, and was then operating. Defendants, by cross-petition, claimed damages for injury to adjacent lands, averring that the railroad divided a farm of about five hundred acres, diagonally, leaving one hundred and sixty acres north-east, and the remainder south-west thereof; that the grade of the roadbed acted as a dam against water flowing from the one hundred and sixty acres, thus overflowing and submerging it; that by reason of openings and bridges in the grade, the lands south-west thereof were washed, overflowed, etc., and that by inconvenience in passing from one part of said farm to another, caused by said grade and the operation of said railroad, all of said lands were damaged. A trial on the original and this cross-petition, resulted in a verdict and judgment for defendants for $4134.50, from which plaintiff prosecuted a writ of error to this court. The case is reported in 118 Ill. 229.

On that hearing, the record showed that at the time the road was built, the title to all the lands in question was in one Bennett, but that after plaintiff became the owner of the road, and after defendants purchased the land of Bennett, a break, some three hundred and fifty feet in length, in the embankment, was caused by an overflow, and that instead of refilling the same, so as to restore the roadbed to its original construction, plaintiff caused a bridge to be put in said opening, which it has since maintained.   On that record it was held, that whatever damage was done to the lands described in the cross-petition, by reason of the original construction of the road, accrued to Bennett, and not the defendants, his subsequent grantees, as held in the court below, and for that reason the judgment was reversed.   It was, however, then decided, that inasmuch as it appeared that a change in the plan of construction in the grade had been made after the title vested in defendants, they could recover for any increased damages caused by the change, and the cause was remanded for further proceedings in accordance with that decision.   Defendants thereupon filed an amended cross-petition, basing their entire claim for damage to lands not taken, on the change.   In it, they aver ownership to all the lands described in the original cross-petition, and allege, generally, that the land is injured by the alteration; but the specific claim is, that so much of the same as lies below or south-west of the grade is thereby overflowed, covered with drift, etc.; that levees theretofore constructed thereon were washed out, and the building of others made impracticable. Plaintiff then filed a statement in writing, purporting to be an agreement, on its part, to restore the embankment to its original plan, and so maintain it.   It was signed, in plaintiff's name, by the attorneys appearing for it on the trial.   On defendants' motion, this paper was ordered stricken from the files.

The bill of exceptions shows that plaintiff made an offer of proof, as follows:  "We offer to prove that the structure put in the opening was put there temporarily, until such time as

it could be ascertained, from the action of the water there, and the effect upon the surrounding country, as to what change should be made,"—but the court held such proof incompetent.

Defendants were allowed to prove, over plaintiff's objection, that by reason of the opening in the grade a small house on the land below the grade was carried off by the water, and a levee built by them destroyed.

Witnesses on behalf of defendants having testified that by reason of the change the land below was flooded, and thereby damaged, they were asked by plaintiff's counsel, on cross-examination, if the change did not benefit the one hundred and sixty acres above the grade, but an objection thereto was sustained. Plaintiff also offered to prove, in rebuttal, the same fact, but the evidence was held incompetent, and excluded. Afterward, however, counsel for defendants withdrew the objection to this last proof, and the court then offered to allow the evidence, and gave counsel for plaintiff an opportunity to introduce it, but they declined. To each of the above rulings proper exceptions were taken.

The verdict is for a gross sum, and contains no description of land to be taken or injured. The amount found by the jury is $3570. Motion for a new trial being overruled, judgment was rendered on the verdict, and plaintiff again prosecutes its writ of error to this court.

The errors assigned are: First, the court erred in striking plaintiff's stipulation from the files; second, the court erred in admitting improper testimony on behalf of defendants; third, the court refused to admit proper testimony offered by plaintiff; fourth, the court gave improper instructions at the instance of defendants; fifth, the court refused to give proper instructions asked by plaintiff; sixth, the court erred in overruling plaintiff's motion for a new trial; seventh, the verdict of the jury is defective.

Mr. G. B. Burnett, for the plaintiff in error:

The court erred in striking plaintiff's stipulation from the files. *Railroad Co.* v. *Kidder*, 21 Ill. 131; *Elgin* v. *Eaton*, 83 id. 535; *Railroad Co.* v. *Railroad Co.* 105 id. 388; *Railway Co.* v. *Railroad Co.* 112 id. 589; *Coal Co.* v. *Switzer*, 117 id. 399.

The court admitted improper testimony on behalf of defendants. *Railroad Co.* v. *Winslow*, 66 Ill. 219.

The court refused to admit proper evidence offered by plaintiffs. *Page* v. *Railroad Co.* 70 Ill. 324; *Shawneetown* v. *Mason*, 82 id. 337; *Green* v. *Chicago*, 97 id. 370.

The verdict of the jury is fatally defective in not finding the compensation for the land taken, and the damages to the land not taken, separately, and in failing to give a description of the land. *Hays* v. *Railroad Co.* 54 Ill. 373; *Railroad Co.* v. *Bryant*, 57 id. 473; *Railroad Co.* v. *Mayrand*, 93 id. 591.

Mr. N. W. Branson, and Mr. Edward Lanning, for the defendants in error:

The so-called stipulation was properly stricken from the files. The attorney had no authority to make the same. *Robinson* v. *Murphy*, 69 Ala. 543; *Moulton* v. *Bowker*, 115 Mass. 36.

As to the form of the verdict, see *Railroad Co.* v. *Mayrand*, 93 Ill. 591.

Mr. Justice Wilkin delivered the opinion of the Court:

The paper denominated a stipulation was properly stricken from the files. It was not, in any sense, an amendment to the original petition, as contended in argument, nor was it filed as such. It was not a plan or proposed plan of construction proper to be incorporated in the record, and therefore *Railroad Co.* v. *Kidder*, 21 Ill. 131, and other like cases cited, have no application. No argument or citation of authorities is needed to show that attorneys employed to represent the company on the trial, could not bind it by their agreement as to the plan

of constructing its road. It is not claimed that they were given any such special authority.

The evidence which plaintiff sought to introduce, for the purpose, as is claimed, of showing that the opening was not intended to be permanent, was incompetent as offered, and the court ruled properly in excluding it. No offer was made to prove, by proper evidence, that the company intended to change the plan upon which the road is at present constructed. For anything appearing in the offer of proof, the company may have intended, after ascertaining the action of the water, to leave it just as it now is, or even so change it as to increase the injury. Having built the bridge, and maintained it as a part of the structure of its road for nearly three years, and having filed its petition to condemn, making no averment whatever of an intended or proposed change in the construction, it was not competent for plaintiff to prove, merely, that it did not intend the opening to be and remain permanent. If it had amended its petition so as to properly aver that it proposed to re-adopt the original plan of construction, and had supported it by the introduction of plans to be incorporated in the record, the question as to whether or not the opening should be treated as a permanent part of the construction, would have been raised. On the present state of the pleadings no such issue is presented.

The evidence introduced by the defendants to prove an injury to their house and levees was calculated to lead the jury to believe that such injuries were proper elements of damages to be considered in making their verdict, and should therefore have been excluded. If the sole object of its introduction was to illustrate the force with which water passed through the opening, as is now contended, it should have been so limited when offered.

There was manifest error in refusing to allow plaintiff to show that the alteration benefited the one hundred and sixty acres above the grade. There is nothing, however, in the

record, to show that the testimony on that question could not have been introduced as well after the objection was withdrawn as when it was first offered. Therefore, if injury resulted to plaintiff for want of such evidence, it was self-imposed, and it can not complain.

The question raised on the assignment of errors as to giving and refusing instructions, involves a decision as to the correctness of the rule adopted by the trial court for the measure of damages. The lands in question border on the Sangamon river, and are, and always have been, subject to frequent overflow. There is no proof as to their value immediately prior to the construction of the railroad; but it does appear that Bennett, the grantor of defendants, purchased the entire tract from the county, as overflowed land, for $1000, and it is clear, from all the proof, that without levees to protect it against the frequent freshets from the Sangamon river, it is of but little value. After defendants purchased, and before the break in the grade of the roadbed, they built a single line of levee from a point of high ground on the west, near the river, extending in an easterly direction, to and connecting with the railroad embankment, whereby they effectually leveed two hundred and eighty acres of that part of the farm situated below or southwest of the road. On this trial, defendants confined their proof of damages to this two hundred and eighty acres, and all the witnesses who make any estimate as to the amount of damages, do so by giving their opinion as to the difference in value of that two hundred and eighty acres before and after the change complained of was made, or, with the above mentioned levee and without it. For instance, the defendant Hamilton, in his evidence, says: "The fair market value of the land below this railway embankment, and within the line of our levee, at the time the opening in the embankment was made, I think is $25 an acre. After the opening was made, I do not think it was worth more than $10 an acre. I figure this difference upon two hundred and eighty acres, and the difference

per acre was $15." On cross-examination, as to this estimate, he says: "I took into account the levee there, and its connection with the embankment, and our use of the embankment as a part of the levee." While it is true that some of the witnesses speak of the increased force with which water is thrown upon the land below, and the impracticability of making levees with the opening in the grade, as elements of damages occasioned by the change, they make no estimate on that basis, nor do they furnish such facts as would enable a jury to do so, except on the theory adopted by Mr. Hamilton.

The court charged the jury, in the third and fourth instructions given on behalf of defendants, that "the proper measure of damages for land damaged but not taken, is the difference between the market value of the land before and after the act of the railroad company which occasioned the damage;" that "the damages to be awarded to the defendants is the difference between the value of the land so damaged before, and the value of said land after, the break was made." Plaintiff asked an instruction, (numbered 6 in its series,) which would, in effect, have informed the jury, that in assessing defendants' damages they should not take into consideration the fact that but for said opening defendants might maintain a levee by attaching the same to the railroad embankment, and use it as a part of such levee to protect their land from overflow; but the court refused to give it. From the evidence, and the giving and refusing of the above mentioned instructions, it is manifest that defendants were allowed to recover, not only for the injury to their land occasioned by the construction and operation of a railroad built on the plan adopted by the change, but for loss resulting to them from the removal of an improvement put on the land by the plaintiff, or the company from which it purchased. Something is said, in the argument, about a contract, by which defendants had a right to use the railroad embankment as part of their levee; but there is no proof of an agreement between them and the plaintiff which would vest in

them an interest in the embankment, or a legal right to compel plaintiff to maintain it, nor did the law, in view of the circumstances under which it was built, give them, as owners of the land, any right of property therein. *Chicago and Alton Railroad Co.* v. *Goodwin et al.* 111 Ill. 273; *Ellis* v. *Rock Island and Mercer County Railroad Co.* 125 id. 82.

There is no claim, on behalf of defendants, that the change in construction was a wrongful or negligent act, and if there was, there could be no recovery by them in this proceeding for such wrong or negligence. It will be seen, by reference to the former opinion herein, that the case on this trial is to be treated simply as a proceeding for re-assessment of damages as to the land not taken but injured, and that the measure of defendants damages is the *increased or additional* injury, if any, caused by the alteration. In an original proceeding to condemn, the measure of damages is the difference between the value of the land, as a whole, before and after the construction of the road built according to the plan proposed. *Chicago and Pacific Railroad Co.* v. *Francis,* 70 Ill. 238; *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co.* id. 324; *Eberhart* v. *Chicago, Milwaukee and St. Paul Railway Co.* id. 347; *Dupuis et al.* v. *Chicago and North Wisconsin Railway Co.* 115 id. 97; *Chicago, Burlington and Northern Railroad Co.* v. *Bowman et al.* 122 id. 595. As to these lands, such damages accrued to Bennett, as heretofore decided. If, after damages have been assessed, or settled by agreement, a change in the plan of construction, involving more damages, is made, the owner may demand a new assessment as to such increased damages. (Mills on Eminent Domain, 219.) To the same effect is the holding in the former decision herein. The proper inquiry, on this trial, was, whether or not the lands in question, as a whole, were damaged more by the railroad built on its present plan, than they were as it was first constructed, and if they were, to determine the amount of such increased damages.

We think the giving of defendants' third and fourth instructions, and the refusal of plaintiff's sixth, was error.

The giving of defendants' first instruction was also error. By it the jury were instructed, that if they should find that the alleged change was made, and that by means thereof the lands of defendants *below* and adjoining the railroad were damaged, then the defendants are entitled to just compensation for the damages so done to their said land. There is some evidence in the record tending to show that the one hundred and sixty acres above the road was benefited by the change; yet this instruction takes the consideration of such benefits from the jury entirely, and confines their inquiry to the two hundred and eighty acres which was damaged. As already stated, and as will be seen from *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co. supra,* and other cases above cited, the measure of damages, in such a proceeding, as to lands injured but not taken, is the difference in the value of the property, as a *whole,* before and after the construction of the road, and therefore, even if it had been proper to allow defendants damages for being deprived of the use of the embankment as a levee to the two hundred and eighty acres, the benefits to other portions of the farm should have been considered in reduction of such damages. The amended cross-petition did not have the effect of confining the inquiry to the lands below the road, as counsel assume. The trial below seems to have been conducted throughout as a proceeding in the nature of an action for damages resulting to the two hundred and eighty acres by reason of a negligent or wrongful failure on the part of plaintiff to properly maintain its embankment, rather than a proceeding to ascertain just compensation under the eminent domain laws of this State.

Under the last assignment of error, it is insisted that the verdict is fatally defective, because it finds a gross sum to be paid defendants, instead of compensation and damages separately, and in failing to describe the land. The authorities

cited in support of this position are not in point. They simply hold that the verdict in such proceeding must conform to the requirements of the law under which it is had. We find nothing in our present statute requiring a more definite or specific finding by the jury than is here returned. The verdict is sustained by *Peoria, Pekin and Jacksonville Railroad Co.* v. *Peoria and Springfield Railroad Co.* 66 Ill. 174, and *Illinois Western Extension Railroad Co.* v. *Mayrand*, 93 id. 591.

For the errors indicated, the judgment of the circuit court must be again reversed, and the cause remanded.

*Judgment reversed.*