**LEWIS v. ATLAS CORPORATION et al.**

Civil Action No. 3344.

District Court, D. New Jersey.

Nov. 28, 1945.

Carpenter, Gilmour & Dwyer, of Jersey City, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for plaintiff.

Milton, McNulty & Augelli, of Jersey City, N. J. (Simpson, Thatcher & Bartlett, Whitney North Seymour, and Armand F. MacManus, all of New York City, of counsel), for defendant Atlas Corporation.

Pitney, Hardin & Ward, of Newark, N. J. (Shelton Pitney, of Newark, N. J., of counsel), for defendant Ogden Corporation.

FAKE, District Judge.

After answers filed, counsel for defendants moved for judgment on the record with affidavits filed under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Counsel for the plaintiff moved to strike certain defenses filed by defendant Ogden Corporation and also for summary judgment against said defendant. This opens the entire record and all allegations well and sufficiently pleaded are accepted as true.

It appears that the record here need not be extensively recited because it is accurately stated in Re Utilities Power & Light Corporation, 7 Cir., 125 F.2d 343, and only so much thereof as is necessary for the conclusion reached here will be recited.

The record discloses that plaintiff Lewis entered into a contract in writing on December 18, 1939, with one Adams, trustee for the Utilities Power & Light Corporation in reorganization, wherein Lewis agreed to buy and Adams agreed to sell certain securities for the sum of $1,600,000. It was mutually agreed that if certain approvals and exemptions by the Court and the Securities and Exchange Commission were not obtained within ninety days from date, the contract of sale would be extended and continued in force until terminated by

218

ten days written notice given by either side. The approval of the Court above mentioned was obtained on December 27, 1939, and in due course applications were made by Adams and Lewis to the Securities and Exchange Commission for its approval.

Thereafter the contract was amended in writing on March 12, 1940, providing "that if the Securities and Exchange Commission shall enter no order granting said approvals or exemptions on or before July 12, 1940 this contract may be terminated by either party" on 10 days written notice.

On April 6, 1940, the Ogden Corporation took over the assets of the Utilities Power & Light Corporation and thereby were substituted in the place of Adams, trustee, subject to the obligations of the trustee Adams under the contract, as appears by reference to the order confirming the plan of reorganization.

On July 5, 1940, the contract was further amended in writing between Lewis and the Ogden Corporation providing that if the Court had not approved the title of the securities, and the Securities and Exchange Commission had not approved the sale as aforesaid on or before August 12, 1940, then in that event, "this contract shall cease and determine."

It should be noted that as of July 5, 1940, both parties to the agreement had come to the conclusion that before a marketable title to the securities could pass, not only the approval of the Commission remained necessary but also that a further proceeding to quiet title in the reorganization court was advisable, and on July 10, 1940, a suit to that end was instituted in the Illinois District Court.

On August 9, 1940, the contract was finally amended in writing and signed by the parties as follows:

"If on or before August 19, 1940 this contract, as amended is not approved by the Securities and Exchange Commission, or the United States District Court for the Northern District of Illinois, Eastern Division, shall not find that the title of Ogden Corporation in and to the securities and indebtedness above mentioned is free from all liens, claims and equities on the part of all persons other than the said Frank J. Lewis, and that Ogden Corporation is entitled to receive and have the full amount of the principal and interest thereof, free from any setoff, lien, claim or defense, or any person whatsoever, this contract shall cease and determine and each of the parties

shall be released and discharged from all further liability thereon, and the earnest money deposited in escrow shall be refunded by the Escrowee to me." (Lewis)

Thus it appears that the contract would terminate by its terms on August 19, 1940, unless the conditions were met on or before that date.

On August 16, 1940, a hearing took place before the Securities and Exchange Commission in furtherance of approval by that Commission. It developed at the hearing that the Commission had not concluded its investigation and the complaint bearing on that point reads as follows:

" 'Mr. Baldy (Counsel for the Commission): Mr. Examiner, as appears from Release No. 2206 and as appears from your remarks at the opening of the hearing today, the Commission has ruled that the line of inquiry represented by Adams' Exhibit 9 (Exhibit "G") is proper to the extent indicated in the release. I may say that we have some men in the field looking into the facts and I would like to defer, for the time being, resuming that line of inquiry. I accordingly suggest that—particularly in view of the fact that there do not appear to be present today any witnesses prepared to testify along that—this hearing be continued, subject to call.

" 'The Examiner: Is there any objection to Commission Counsel's request that the hearing be continued, subject to call?'

"(Counsel for defendant Ogden Corporation, counsel for Atlas Corporation and counsel for plaintiff thereupon conferred together and agreed to an adjournment as suggested by the Commission.)

" 'Mr. Blady: May the record show, Your Honor, that no counsel objects to that?

" 'Examiner: The record will so show; and if there is no objection we will continue the case subject to call of the Examiner.' "

I take it that the above stated matter within the parentheses was not part of the record quoted but new matter added by the pleader.

■ The affidavits filed herein are in conflict as to whether the lawyers agreed to a continuance as above stated and the answer is in denial thereof, thus raising a question of fact which would of necessity go to a jury unless standing as it does it is insufficient to constitute an amendment to the contract, extending the time of its expiration.

■ Whether or not the conduct of counsel for Ogden Corporation amounts to a waiver as to the date of the expiration of the contract or operates to estop Ogden Corporation from exercising its right to terminate the contract as of August 19, 1940, depends upon the law of the State of Illinois bearing on these points and in this connection the following cases are noted.

In the case of Wabash, St. L. & P. Ry. Co. v. McDougall, 126 Ill. 111, 18 N.E. 291, 293, 1 L.R.A. 207, 9 Am.St.Rep. 539, the Court says: "No argument or citation of authorities is needed to show that attorneys employed to represent the company on trial could not bind it by their agreement as to the plan of constructing its road. It is not claimed that they were given any such special authority."

In Rubel v. Title Guarantee & Trust Co., 199 Ill. 110, 64 N.E. 1033, 1034, the following appears in the syllabus: "That, in condemnation proceedings, the attorney for the tenant of a building to be condemned asked the court to determine the question of his liability for rent, and that the attorney for the railroad seeking to condemn said nothing, is insufficient to show that the company was bound as to the rent by a judgment subsequently entered." And in that case, the Court said: "The offer of proof of what was said by the attorney of appellants at the trial of the condemnation suit did not go far enough to make it binding upon the railroad company. It does not appear from the offer that the attorney for the company assented to the proposition that the court take into consideration the rent then due and that might accrue upon the leasehold in fixing the amount for which judgment should be rendered in appellants' favor in the condemnation suit. *Mere silence on his part would not bind the company. Neither does it appear from the offer said attorney had any authority to make such a stipulation on behalf of the company; and, if he did not have such authority, the stipulation, if made, would not have been binding upon the company.*" (Emphasis added.)

And in Noel State Bank v. Blakely Real Estate Imp. Corporation, 321 Ill.App. 594, 53 N.E.2d 621, the syllabus reads: "Master in chancery knowingly submitting a false report reciting that a certain sum had been retained from proceeds of sale on foreclosure of trust deed subject to adjudication of priority of lien claimed by a third person would not be permitted to escape the consequences of his act by repudiating and contradicting his official report so as to show that actually with full knowledge of all parties and attorneys representing them, no cash was paid except a small amount and that nothing was retained subject to adjudication of question of priority of lien." The Court said: *"Neither was any attempt made to show any authority of the attorney to acquiesce in such uncertain arrangements and thereby waive Cuzzone's right to have the premises sold for actual cash and his lien satisfied out of the proceeds. An attorney does not have implied authority to waive substantial rights of his client."* (Emphasis added.)

The foregoing Illinois cases involve relations between attorney and client. Where agency is involved the following cases are noted:

In Gerrish v. Maher, 70 Ill. 470, the syllabus reads: "Where an agent is employed merely to carry out and perform a contract already made by his principal, he is not authorized to change the contract, or to make a new one. Where a party sold land to another, to be paid for part in cash and part on time, the cash payment to be made, and the deferred payments to be secured by trust deed, when the vendor should deliver a warranty deed, and an abstract showing good title to the purchaser, and the agent of the vendor, by his direction, tendered such deed and abstract to the purchaser, and demanded performance of the contract, and the latter failed to perform, and afterwards claimed that the agent agreed to give him further time: *Held, that the agent had no authority to give any extension of time, his authority being simply to perform the contract already made, and not to make a new one."* (Emphasis added.)

In Lawrence, etc. v. Johnson et al., 64 Ill. 351, the syllabus reads: "Where a person is employed merely as an agent to collect a promissory note, *he cannot, without the consent of his principal, make a contract with the principal maker of the note to extend the time of payment, and then discharge the sureties on the note of their liability.*" (Emphasis added.)

■ In each instance where an extension of time was considered by the parties herein, they reduced their agreement to writing bearing the signatures of Lewis and the duly constituted officers of the Ogden Corporation. Such then having been the course of conduct of the parties, and the amount involved being over a million and a

half dollars, a stronger affirmative allegation must appear in the record than is found here before an extension of time can be read into the contract in variance of its terms.

At the final appearance before the Commission, counsel for Ogden Corporation was placed in a most difficult position when the question of further time was broached. His client's contract bound it to do nothing in the direction of delay. It provided a burden on the Ogden Corporation to "proceed promptly," hence he was himself so bound. Moreover if he agreed to an extension of time he was acting in direct violation of his client's written contract as to the expiration date. In such a posture it is my view that the attorney for the Ogden Corporation could not bind his client beyond the terms of the contract without express authority to do so or in the absence thereof the presence of some positive conduct on the part of its executive officers from which a waiver or an estoppel could be found. No such conduct appears here.

The action of the Ogden Corporation in withdrawing its application before the Commission took place after the contract had terminated and such withdrawal to close the record at the request of the Commission cannot be construed against it.

In the arguments and in the briefs the doctrine of time as of the essence is considered. It is my view that, strictly considered, the doctrine does not apply here; it is generally invoked only in those instances where the parties have obligated themselves to do or perform specific acts within a time expressly limited. Here the contract contemplates the performance of certain acts by a Court and a Commission functioning beyond the control of the parties. No promise or covenant appears wherein either party is bound to attempt to inflict a limitation of time upon either of these forums and indeed they could not validly do so. Therefore desiring to protect themselves against delay over which they could exercise no control and dealing as they were with securities of possible fluctuating values they considered the element of time and made it a condition nullifying the contract on a day certain on failure of the approvals sought. I therefore conclude that the approvals not having been obtained within the time limited the contract terminated on August 19, 1940.

Judgment final will be entered in favor of the defendant Ogden Corporation and since the liability of the defendant Atlas Corporation was dependent upon the liability of Ogden Corporation, the like judgment will be entered in its favor.