**LEWIS v. ATLAS CORPORATION et al.**

No. 9148.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 4, 1946.

Decided Dec. 10, 1946.

600

Elmer J. Bennett and James D. Carpenter, Jr., both of Jersey City, N. J., for appellant.

Whitney North Seymour, of New York City (Milton, McNulty & Augelli, and John Milton, both of Jersey City, N. J., Simpson, Thacher & Bartlett and Armand F. Macmanus, all of New York City, Pitney, Hardin, Ward & Brennan, of Newark, N. J., and Charles R. Hardin, of Newark, N. J., on the brief), for appellees.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and RODNEY, District Judge.

GOODRICH, Circuit Judge.

This is an appeal from the action of the District Court in granting summary judgment for the defendants under Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c. Although the plaintiff, himself, had also moved for summary judgment in the District Court, his position now is that his allegations, together with the supporting affidavits filed, presented questions of fact on which he was entitled to have the judgment of a jury. At this stage of the litigation we must take the statement of facts in the plaintiff's supporting affidavits as true. But differences of fact between what he and his witnesses say and what the defendants with their supporting affidavits say are only important if legally significant.

The action stems from a contract made between Charles True Adams, Trustee, of a concern known as Utilities Power and Light Corporation, which was in reorganization proceedings in the District Court for the Northern District of Illinois, and Frank J. Lewis. Adams agreed to sell and Lewis agreed to buy at a stipulated price, approximately one and a half million dollars, certain debentures of the Central States Power and Light Corporation which were owned by Utilities Power and Light Corporation. The transaction was never completed. The plaintiff sues for damages for breach of contract, adding claims for inducement of breach of contract against Atlas Corporation (hereafter called Atlas), one of the defendants. Present defendant, Ogden Corporation (hereafter called Ogden), is the successor of Adams, Trustee, through a transaction of April 6, 1940, and the other defendant, Atlas, is the owner of seventy-six per cent of the stock of Ogden. A full recital of the transactions between the parties which led to this lawsuit may be found in the opinion of the court in In re Utilities Power and Light Corporation: Lewis v. Ogden Corporation, et al., 7 Cir. 1942, 125 F.2d 343. The claim involved here was in litigation in that proceeding. But the Seventh Circuit decision was based on lack of jurisdiction of the Reorganization Court to decide the matter. In view of the recital above referred to only such facts will be stated here as are necessary to bring out the legal points involved in this appeal.

This case involves no federal question and is in Federal Court solely on grounds of diversity. The Federal Court takes its applicable rule of law from the state courts of the District in which the Federal Court sits and this includes its conflict of laws references to laws of other states where they are relevant.[1] We look, therefore, to the conflict of laws rule of New Jersey in this issuance.

Although not developed by the argument of the parties it appears that the

1 Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Wolkin, Conflict of Laws in the Federal Courts: The Erie Era (1946) 94 U. of Pa.L.Rev. 293.

agreement sued upon was an Illinois contract. This appears from the copy contained in the exhibits. Its stated place of making is Chicago, Illinois, and the place of delivery appears to be Chicago. It was made between a buyer with a Chicago address and a Chicago seller who was trustee for a corporation which was in reorganization proceedings in the Federal Court in Illinois. The same Illinois setting is found for amendments subsequently made to the original agreement which will be mentioned hereafter. Only one possible exception to this statement appears. There is conflict in the affidavits as to whether the last amendment was executed in Chicago or upon an airplane while the parties were on their way from Chicago to Washington. We are not informed, however, where the airplane was at the time of the alleged execution of the amendment. Inasmuch as the amendment was simply changing a time provision in an agreement which in all other respects had an Illinois setting, we think the fact of its execution on a traveling airplane is without significance on this phase of the matter.

The rule of the New Jersey courts with regard to a contract entered into and to be performed in another state by parties doing business there, is to refer all questions relating to its validity, effect, performance, discharge, etc., to the law of that state.[2] Questions concerning this contract, then, are to be referred to the law of Illinois. This is what the District Judge did.

The original agreement was dated December 18, 1939. The contract for the sale of the debentures was made subject to the approval of the Reorganization Court and the Securities and Exchange Commission.[3] The seller agreed to proceed promptly to secure the approval of the Reorganization Court and of the Commission. The time clause in this contract was to the effect that if such approval was not obtained within ninety days from the date of the agreement the sale was subject to termination by either party on ten days written notice.

Approval of the Reorganization Court was given on December 27, 1939, subject, however, to subsequent approval of the Securities and Exchange Commission and any other regulatory body having jurisdiction. The Trustee filed an application with the Securities and Exchange Commission for permission to sell the securities. In the course of the hearing before that body the question of subordination of these securities to the Deep Rock doctrine[4] was raised by counsel for the Commission.

In the meantime, the expiration period of the agreement was approaching. The parties on March 12, 1940, executed an amendment extending to July 12, 1940, the date after which the agreement could be terminated on ten days notice. There were further hearings before the Securities and Exchange Commission and there was a suggestion by counsel for the buyer that he would institute an action on behalf of a preferred stockholder of Central States for the purpose of securing subordination of the Central States debentures to the preferred stock of Central States which was publicly held. Again, the time fixed for the expiration of the agreement was approaching. On July 5, 1940, there was another amendment executed by the parties which substituted for the previous termination arrangement a provision for automatic termination on August 12, 1940, if,

2 Cockrell v. McKenna (1928) 104 N.J. L. 592, 142 A. 20; Dennison v. Dennison (1925) 98 N.J.Eq. 230, 130 A. 463; Seacoast Real Estate Co. v. American Timber Co. (1918) 89 N.J.Eq. 293, 104 A. 437; 2 Beale, Conflict of Laws (1935) 1154.

3 The Approval of the S.E.C. regarding the sale and the purchase was required even without a contractual stipulation of the parties. This is so because of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 817, 818, 823 (1935), 15 U.S.C.A. §§ 79i, 79j, 79l, (1941).

4 Taylor et al. v. Standard Gas & Electric Co. et al., 1939, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669. Headnote 5 on pages 307, 308, of 306 U.S., 59 S. Ct. 543, states briefly the Deep Rock doctrine. The headnote in part is: "No plan [for reorganization] ought to be approved which does not accord such [non voting] preferred stockholder a right of participation in the equity in the assets prior to that of the parent company, and at least equal voice with that company in the management."

by that time, the Commission had not approved the sale or the Reorganization Court had not quieted Ogden's title to the securities. In this agreement Ogden, the successor of Adams, Trustee, appeared as the seller. There was also executed between the parties on this date a "settlement agreement". This will be discussed below.

The third extension of the agreement was entered into later. It bears date of August 9, 1940. Whether it was executed then or on the 14th or 15th of August is in dispute. We think it does not matter. This amendment provided that the contract should cease if on or before August 19, 1940, one of two things did not occur. There had to be either an approval of the agreément by the Sécurities and Exchange Commission, or a finding by the Reorganization Court that the title of Ogden Corporation was free of all claims of other persons than Frank J. Lewis.[5] In the inexorable process of time, the 19th of August, 1940, duly came. Neither the Securities and Exchange Commission nor the Reorganization Court had taken action of the sort specified in the August 9 amendment. Ogden thereafter took the position that the contract had come to an end by its own terms. This position it still maintains. This was the view taken by the District Judge. If it is correct, plaintiff necessarily loses. We pass, therefore, to the points urged by the plaintiff, buyer, against this position.

The plaintiff seeks to get rid of the August 9 amendment through the claim that it was not delivered as an instrument intending to be binding upon the parties to it. It was "executed and delivered merely as window dressing for the Securities and Exchange Commission." The plaintiff cites authority saying that the parol evidence rule does not preclude a showing that a purported agreement was in fact no agreement at all.

■■ This argument, we conclude, does not advance the plaintiff's case. It rests factually upon an affidavit executed by Mr. Manion, then counsel for the palintiff. The affidavit says that Mr. Blumberg, the then attorney for defendant, said of this August 9 amendment that "* * * it was to be issued only in the event that any question was raised by the Securities and Exchange Commission as to the termination date of the contract that had been sent to them under date of July 16, 1940." This August 9 amendment was formally filed with the Securities and Exchange Commission. Furthermore, at the hearing held under the Commission's auspices the trial examiner directly asked Mr. Manion: "By the way, what is the date of the expiration of that contract, Mr. Manion, existing between Ogden Corporation and Mr. Lewis?" Mr. Manion replied: "That is the 19th of August."[6] If the execution of this amendment was a conditional matter between the parties that condition seems surely to have been met in both the filing of the instrument with the Commission and the acceptance of its terms by plaintiff's counsel at the Commission hearing. Plaintiff can hardly be in a position of asserting the existence of an agreement before a public regulatory body and denying it before a court.

■ Furthermore, rejection of the August 9 amendment throws the parties back on the terms of the second amendment. By the terms stipulated in that amendment the expiration date was August 12. So we think the plaintiff gets nowhere in an attack upon the binding nature of the August 9 amendment.

■ Plaintiff relates certain occurrences in which he says the conduct of the then counsel of the defendants was inconsistent with the existence of the August 19 termination date and that this conduct constituted a waiver of the time provisions of the contract. One of these instances has to do with what took place at the Securities and Exchange Commission hearing on August 16. Counsel for the Commission said he

---

5 This "amendment" also provided that: "* * * In the event of any conflict, inconsistency, or incongruity between the provisions of this amendment and any of the provisions of said contract as heretofore amended, the provisions of this amendment shall in all respects govern and control." Reprinted in Appendix for Appellant, p. 119a.

6 Extract of Proceedings before the S. E.C. on August 16, 1940, to be found in Appendix for Appellant at pp. 398a, 399a.

was not ready to present evidence along the line of inquiry looking to the application of the Deep Rock doctrine, already mentioned. He asked to have the hearing continued, subject to call. And at his request the record was made to indicate that there was no objection. There is dispute in the affidavits as to whether Mr. Blumberg, defendants' counsel, shook his head when asked by the examiner if there was any objection to a continuance. As said before, we must, in the state of the case here presented, take the plaintiff's statement as true for whatever legal significance it may have. To make anything of this point the plaintiff must argue, obviously, that this failure to object on counsel's part to a continuance amounted to a waiver of the time provisions of the contract. This in spite of the fact that over a number of months the parties had carefully stipulated for time limitations in agreements, not signed by counsel, but by the parties themselves. The District Court thought this was too slight a foundation. It said: " * * * Such then having been the course of conduct of the parties, and the amount involved being over a million and a half dollars, a stronger affirmative allegation must appear in the record than is found here before an extension of time can be read into the contract in variance of its terms." We share this well stated conclusion.

We can also support it by a legal foundation in addition to one based on fact. Here again our reference is to Illinois law since we are dealing with the effect of the creation of the agency known as attorney and client which took place in Illinois. We think that under the Illinois decisions the attorney under these circumstances did not have the authority to waive the time provision inserted by the client into the contract, even had he desired to do so.[7] Upon inspecting the affidavits filed by the defendants we learned that B. H. Brewster, President of Ogden Corporation, under oath, stated that no one had been authorized to waive or release the time element of the amendments. This Court may accept Brewster's affidavit as admitted.[8]

Plaintiff also makes a point about the conduct of Mr. Blumberg in appearance before the Reorganization Court on August 5 and August 9, 1940. This was in the proceeding in that Court to quiet title to the securities in Ogden. The District Judge informed counsel that he was engaged in other matters and could not handle this one before October. Mr. Blumberg, according to an affidavit by Mr. Manion, expressed the hope that the Judge, who was already familiar with the case, would not refer it elsewhere, but would keep it himself to settle when he could. He also asked that he might have until September 15 to file his brief. This conduct the plaintiff says is inconsistent with the termination date expressed in the contract. We think the short answer to the argument here can rest on the limitation upon the power of the attorney already expressed above. There may be other answers, also, but we think the legal proposition we have already developed disposes of the contention. As a make-weight, however, we call attention to the provision in the August 9 amendment quoted above in footnote 5 which certainly attempts to dispose in pretty clear language of everything which may have gone before upon the matter of termination date.

Finally, plaintiff points out supposed inconsistencies between the "settlement agreement" of July 5 and the amendment entered into upon that date with regard to the matter of time at which the sales contract was to expire. We are not impressed with the inconsistencies. The two documents executed between the parties on July 5 do not refer to each other. We think the reason that they do not refer to each other is that they dealt with different things. One had to do with the appli-

[7] Noel State Bank v. Blakely Real Estate Improvement Corporation, 1944, 321 Ill.App. 594, 53 N.E.2d 621, 624 (" * * * An attorney does not have implied authority to waive substantial rights of his client. * * * ") Rubel v. Title Guarantee & Trust Co., 1902, 199 Ill. 110, 64 N.E. 1033; Wabash, St. L. & P. Ry. Co., v. McDougall, 1888, 126 Ill. 111, 18 N.E. 291, 1 L.R.A. 207, 9 Am.St.Rep. 539.

[8] Allen v. Radio Corporation of America, D.C.Del.1942, 47 F.Supp. 244.

cation to quiet title in the Reorganization Court; the other had to do with the sale of securities by one party to the other. We find nothing here to support an argument that the expiration date of the sales contract was not just what the parties said it was. Even if it were not, we think it ironed out by the provision in the final extension agreement of August 9.

We reach the conclusion, then, that the District Judge was correct in granting summary judgment under Rule 56 to the defendants.

Affirmed.