### In re UTILITIES POWER & LIGHT CORPORATION.

### LEWIS v. OGDEN CORPORATION et al.

### No. 7780.

Circuit Court of Appeals, Seventh Circuit.

Jan. 22, 1942.

Rehearing Denied Feb. 16, 1942.

A. B. Manion, of Chicago, Ill., for appellant.

Charles LeRoy Brown, Jacob Logan Fox, and Nathan S. Blumberg, all of Chicago, Ill., for appellees.

John R. Heath, of Chicago, Ill., special master, pro se.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order, entered May 15, 1941, denying appellant's motion for leave to file a petition entitled a "Petition to Impound Certain Securities Covered by Contract Dated December 18, 1939, Between Charles True Adams, as Trustee, and Petitioner, and for the Appointment of a Trustee to Carry Out said Contract Pursuant to Decree of this Court Entered January 2, 1940, and for Other Relief in Connection Therewith." There is also an appeal from an order, entered May 16, 1941, fixing the fees of appellee Heath, Special Master, to whom was referred appellant's motion, for leave to file his petition, at the sum of $1,640, taxed against appellant.

The voluntary petition for reorganization of Utilities Power and Light Corporation (hereinafter referred to as the "debtor") under Section 77B of the Bankruptcy Act, § 207, Title 11, U.S.C.A., was approved by the court, January 4, 1937. The plan of reorganization was approved, November 3, 1939, for submission to creditors and stockholders. Acceptances sufficient to insure confirmation, were returned by the master, with his report to the court, December 4, 1939. The plan of reorganization was proposed by the Atlas Corporation (hereinafter referred to as "Atlas") which was instrumental in the incorporation of the appellee, Ogden Corporation (hereinafter referred to as "Ogden" or the "New Company"). The latter was made a party to the proceedings, and to it all the property of the debtor was to be conveyed. During the course of the proceeding, Charles True Adams was the duly appointed, qualified and acting trustee of the debtor's estate and had the control, management and possession of its property until it was transferred to Ogden, as provided in the decree confirming the plan of reorganization.

On December 18, 1939, Adams as trustee, entered into an agreement with appellant Lewis concerning the sale of certain designated assets of the debtor corporation. Among such, and the only ones of substantial value, were $5,108,040 of five per cent debentures of Central States Power and Light Corporation, (hereinafter referred to as "Central States") valued at the time

of the hearings on the plan of reorganization at $1,015,000. This valuation was later substantially increased by reason of the purchase, by Central States, of a large block of its bonds at a discount.

Paragraph 1 of the agreement between Lewis and Adams, provided. "I hereby agree to purchase from you and you hereby agree, subject to the approval of the court and the Commission, to sell to me the securities above described for the sum of $1,600,000; plus interest thereon * * * at the rate of 4% per annum from the date hereof. * * *"

The purchase price was subject to reduction by the income received from the described securities "from the date hereof to the date of the consummation of this agreement."[1] Adams agreed to proceed promptly to secure the approval of the Securities and Exchange Commission or any other regulatory body having jurisdiction. It was provided that if Adams was unable to secure said approval and to consummate the sale within ninety days from date, the time for securing said approval and consummating the sale should be extended and continued in force until terminated by ten days written notice given by either party. In case the agreement was approved by the court, it was provided that it should be assumed and become the obligation of Ogden. The last paragraph of the agreement was to the effect that it embodied the entire understanding and that no representations or warranties were made which were not embodied therein.

On December 27, 1939, Adams petitioned the court for an order approving said agreement, and on the same date an order of approval was entered. Paragraph 2 of this order provided:

"If prior to the consummation of said agreement the Atlas Plan of February 1, 1939, as amended, shall have been confirmed by this Court and the securities more particularly described in said contract dated December 18, 1939 between Charles True Adams, as said Trustee, and said Frank J. Lewis, shall have been delivered to the Ogden Corporation, which corporation is more particularly described in said Plan of Reorganization, as amended, then and in that event said Ogden Corporation, by accepting the delivery of said securities, shall assume and become bound by all of the obligations of the said Charles True Adams, as Trustee, as provided and defined in said agreement of December 18, 1939, and in that event the said Ogden Corporation shall be substituted for the said Charles True Adams, as said Trustee, as a party to said agreement of December 18, 1939, and the said Charles True Adams, as said Trustee and individually, shall be released from any further obligation or liability under said contract, but in no event shall the said Frank J. Lewis be released from said contract on account of the substitution of said Ogden Corporation. Provided, however, that said agreement and the assumption thereof by Ogden Corporation shall not in any wise affect, modify, or alter any obligation to be undertaken or performed by said Ogden Corporation under the Plan of Reorganization and shall be without prejudice to said Plan and any orders of this Court and the Securities and Exchange Commission approving the same or any acceptances thereof by old security holders."

Adams was given authority to make the necessary application to the Commission for permission to sell said securities and to cause to be done any and all things necessary or convenient to consummate said agreement in accordance with its terms, conditions and provisions. The order also found that under Section 12(d) of the Public Utility Holding Company Act of 1935, ¶ d, § 79l, Title 15, U.S.C.A. and the regulations promulgated thereunder, no sale of the securities in question could be made without first obtaining the approval of the Securities and Exchange Commission.

On January 2, 1940, the court entered its order confirming the plan of reorganization as proposed by Atlas Corporation, by which title to all assets in the hands of the trustee was vested in Ogden, free and clear of all claims of the debtor, its stockholders, creditors and trustee, with certain exceptions not here material, and all creditors and stockholders of the debtor were perpetually enjoined from asserting any right, title, claim or interest therein. The order provided that all assets of the debtor corporation be transferred to Ogden, and that—"The New Company shall remain liable on the following contracts of the Trustee and the Debtor incurred in the course of the reorganization proceedings, which, by their terms, do not terminate at the conclusion of the reorganization proceedings, * * *" and then enumerated

---

[1] The securities, during the time material to this controversy, returned an income in excess of $250,000 per annum.

certain agreements, among which was the agreement between Adams and Lewis dated December 18, 1939, and included in the court's order of December 27, 1939. It was expressly provided that Ogden should not be bound to the agreement with Lewis— "* * * until the Securities and Exchange Commission shall approve said contract and provided further that if such approval is not obtained within the time provided in said contract for obtaining such approval the New Company shall be free to terminate and cancel said contract."

With reference to the reservation of jurisdiction, the order provided: "* * * and this court reserves full right and jurisdiction to make from time to time such orders as it shall deem proper in exercising the powers conferred by the provisions of Section 77B of the Bankruptcy Act and in general reserves full right and jurisdiction to make at any time such orders for the purpose of putting into effect the Plan, or enforcing or carrying out this order, as this court may at any time deem proper, but this reservation shall not be construed, and is not intended in any manner to limit or qualify the final confirmation of the Plan as herein provided."

The securities in controversy were delivered by Adams to Ogden on April 6, 1940, in accordance with the plan of reorganization as confirmed January 2, 1940. The agreement of December 18, 1939, was thrice amended, to-wit: March 12, 1940, July 5, 1940, and August 9, 1940.

On February 10, 1941, appellant served notice upon counsel for Ogden that on the following day he would appear before the court and ask leave to file a petition, (the one now in controversy) the prayer of which was (a) that Ogden Corporation answer within ten days, (b) that the order of January 2, 1940, confirming the reorganization plan be vacated and set aside insofar as it authorized the said trustee to deliver to the Ogden Corporation the securities in question, and directed that the said Ogden Corporation be substituted in said contract in the place and stead of said trustee to carry out the contract aforesaid; (c) that the securities covered by the contract of December 18, 1939, together with income therefrom, be impounded, or, in the alternative, a trustee be appointed and the securities delivered by Ogden to such trustee with directions to the trustee to carry out the contract of December 18, 1939; (d)

that upon final hearing, the amendment of March 12, 1940, extending the time of performance, be set aside and that the amendment of July 5, 1940, also be set aside insofar as it waives any of petitioner's rights under the contract of December 18, 1939, and (e) that the court make such other and further orders as might be necessary to protect petitioner's title and for the specific performance of such contract.

On February 11, 1941, when Lewis presented his motion in open court for leave to file his petition, attorneys for Ogden were present and orally objected, on the grounds that it was scandalous and impertinent, that it failed to state a case for relief and that the court should not take jurisdiction of a petition seeking to vacate a provision of the order of confirmation vesting title, to the securities, in Ogden. The court stated that he would not have time to examine the petition but that reference would be made to a Special Master for report "as to whether the petition should be allowed to be filed." This was done and a hearing was commenced before the Special Master on the following day. During the hearing, at the insistence of Lewis, the Master directed Ogden to file written specifications of their objections to the filing of the petition, which was done. The Master filed a lengthy report and thoroughly analyzed the petition sought to be filed. He recommended that leave to file be denied, which recommendation was approved by the court in the order appealed from.

Lewis contends that he was entitled to file his petition as a matter of right, while Ogden contends that the petition presented only collateral issues, not cognizable in the bankruptcy proceedings and, in any event, could not be filed without leave of the court. Lewis further contends that the court was without authority to refer the question "as to whether the petition should be allowed to be filed" to a Master, but even though the court had the authority in this respect, the Master and court were without power, on the question presented, to examine the sufficiency of the petition. Ogden contends that the procedure was proper and further, that Lewis, by adopting such procedure, is now estopped from attacking its propriety. Another issue in controversy between Lewis and appellee Heath is the court's order of May 16, 1941, fixing the latter's fees and assessing the same against Lewis.

■ The petition sought to be filed, together with the exhibits attached thereto and made a part thereof, occupies more than 100 pages of the printed record. We are convinced that no necessity exists for a detailed review of the allegations made in the petition. This is so for the reason that, in our judgment, the court was without power to grant the relief sought. It was without jurisdiction of the subject matter sought to be litigated.

The petition alleged the making of the agreement of December 18, 1939, between Adams and Lewis, the order of the court of December 27, 1939, approving said agreement, and of January 2, 1940, confirming the plan of reorganization (the pertinent provisions of which have been noted heretofore). It alleged that on January 18, 1940, an application was filed before the Commission by Adams for approval of the sale of the securities referred to in the agreement, and at the same time an application by Lewis to purchase said securities; that at the hearing before the Commission which commenced February 26, 1940, it developed that there might be a serious question as to whether said securities (debenture bonds) might not be subject to subordination to the publicly-held preferred stock of the Central States Power and Light Corporation, and that, in such event, the securities were worthless.

In view of petitioner's prayer that certain agreements purporting to amend the agreement of December 18, 1939, be set aside, it may be material to refer briefly to the allegations concerning such agreements. The petition recites an oral agreement between Lewis and the trustee, March 12, 1940, by which the agreement of December 18, 1939, was to remain in full force and effect until the Commission had completed its investigation relative to the possible subordination of the debentures and for thirty days thereafter. Upon objection by Ogden, to the oral agreement, waiving a termination date, a written amendment to the oral agreement of March 12, 1940, was entered into between Lewis and the trustee on March 13, 1940. This written amendment provided for termination upon either party giving to the other ten days written notice, provided the Commission had entered no order granting its approval on or before July 12, 1940. On July 5, 1940, another amending agreement was made, this time between Lewis and the Ogden Corporation, which provided for automatic termination of the contract, if the consent of the Commission was not obtained by August 12, 1940.

On August 9, 1940, Lewis and Ogden entered into a further agreement entitled "Third Amendment" which provided that the time within which the approval of the Securities and Exchange Commission might be secured was extended to August 19, 1940. By this amendment it was agreed that if such approval was not obtained, the agreement should at once cease and determine. From the allegations of the petition it is plain that the chief obstacle in the way of obtaining Commission approval was the question, which had early been raised, regarding the rights of the owners of the publicly-owned stock of Central States to the securities in question. It is also clearly disclosed that this was a matter of vital concern to Ogden for the reason that action, in favor of such stockholders, would have rendered worthless, securities for which it had paid more than a million dollars. It also appears that this was just as important to Lewis for the reason that the securities, if obtained, would have been worth no more to him than they were to Ogden.

On July 10, 1940, Ogden, by agreement with Lewis, filed a quiet-title proceeding in the District Court to secure an adjudication that the holders of the publicly-held preferred stock of Central States were without right to have the securities subordinated. Thus was presented to the court the same issue pending before the Commission. The preferred stockholders of Central States and the Commission appeared in this hearing, and by motion attacked the jurisdiction of the court to make such adjudication. It was pointed out that under the plan of reorganization Ogden and Central States were bound to file a plan under Section 11(e) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79k (e), and that under such proceeding the title to the securities would be determined. This case was taken under advisement but never decided.

On July 15, 1940, the Commission released its opinion refusing to approve the sale of the securities to Lewis and upon his request such opinion was withdrawn and the hearings reopened.

The gist of Lewis' complaint, as we understand it, is that Ogden fraudulently obtained his consent to the amendments, to the agreement of December 18, 1939, made

fraudulent promises as to efforts which it would employ to obtain the approval of the Commission and that it was the acts of Ogden which prevented such approval. Appellant correctly states in his reply brief "the reorganization proceedings terminated with the delivery of the assets of the Utilities Power and Light Corporation on April 6, 1940. The court only retained jurisdiction of the said proceedings to see that its order confirming the plan of reorganization was carried out." Thus the sole question for decision is whether the relief sought by appellant was in aid of the plan of reorganization and, if so, did the court, by its order of confirmation, reserve jurisdiction for such purpose?

It will be noted that all the acts alleged as fraudulent were committed subsequent to January 2, 1940, the date of the court's confirmation order, when title in the securities passed to Ogden, and subsequent to April 6, 1940, when the securities were delivered to Ogden. It is readily apparent that the acts complained of have no connection with, or relevancy to, the plan. Appellant's position is predicated upon the false premise that the contract of December 18, 1939, was made a part of the plan. That it was not is evidenced by the fact that the creditors assented to the plan, December 4, 1939, prior to the date of the agreement between the trustee and Lewis. Neither the debtor, its creditors, or stockholders were concerned with the Lewis agreement for the reason that Ogden, in conformity with the plan, accounted to the estate for the value of the securities in question. So far as we are aware, it was, and is, immaterial to the debtor, its stockholders and creditors whether the securities in question become the property of Lewis, or remain that of Ogden, who paid for them and to whom they were delivered. The statute concerning confirmation of the plan, sub. h, § 207, Title 11, U.S.C.A., provides: " * * * and the property dealt with by the plan, when transferred and conveyed by the trustee * * * to the debtor or the other corporation * * * provided for by the plan * * * shall be free and clear of all claims of the debtor, its stockholders and creditors, * * *."

■ The sale and delivery of the securities to Ogden were an integral part of the plan, submitted to the creditors, assented to by them and confirmed by the court. Now it is sought to vacate and set aside the order by which title was vested in, and de-livery made, to Ogden. Such action would be in derogation of the plan—in fact it would be calculated to destroy it. The prayer that the securities be impounded and a trustee appointed to carry out the agreement of December 18, 1939, is likewise inconsistent with the plan. If it be assumed, however, that the court had authority in this respect, its exercise would be a futile and idle gesture for the reason that performance of the agreement was expressly made contingent upon approval by the Commission, which the court is powerless to direct.

The limitation of the court in this respect was recognized by provision in its confirmation order—"the New Company under the plan shall succeed to each and all of the rights of the trustee * * * provided, however, that nothing herein, or elsewhere contained shall be construed to bind the New Company to the contract with Frank J. Lewis for the sale of the securities of Central States * * * until the Securities and Exchange Commission shall approve said contract. * * *." Again the order of December 27, 1939, approving the agreement with reference to its assumption by Ogden, provided: " * * * and shall be without prejudice to said plan and any orders of this court and the Securities and Exchange Commission approving the same * * *."

■ Petitioner argues his position as though he had an absolute contract for the purchase of the securities. Whether such a premise would alter the situation, we need not discuss for the reason that whatever right he acquired by the agreement was subject to the approval of the Commission. This was so by the parties' express agreement and recognized by the court. Irrespective of such agreement, however, there could have been no sale of the securities without the approval of the Commission, 12(d), Public Utility Holding Company Act, 79*l*(d), Title 15 U.S.C.A.

■. We do not, of course, pretend to decide any issue which may exist between Lewis and Ogden. What we do decide is that the relief sought was foreign to the plan of reorganization, that the court had no jurisdiction of the subject matter, and properly denied the motion for leave to file the petition. Notwithstanding our view in this respect, we know of no reason which precluded the court from referring the question presented—that is, petitioner's motion for leave to file his petition—to a mas-

ter. Generally, such practice might be criticized, but in the instant situation, we see no impropriety. There is no reason to believe that petitioner has been injured by the procedure adopted. As already pointed out, he made no objection to such reference and was allowed an extensive hearing by the master. If the master is subject to any criticism, it is that the hearing consumed more time and effort than was necessary to determine that the relief sought by petitioner was in derogation of the plan of reorganization, and that the court was without jurisdiction. This opinion may be subject to the same criticism.

At the time of oral argument, we were impressed with the contention that the amount allowed the master for fees and expenses was unreasonable. Our study of the case, however, has changed our opinion to the extent that we do not believe the court below abused its discretion in this respect. Nor do we think there was any error in taxing such fees and expenses to petitioner.

The orders appealed from are affirmed.