**FINDLEY, County Treasurer, et al. v. ODLAND.**

**No. 9074.**

Circuit Court of Appeals, Sixth Circuit.

May 14, 1942.

C. C. Sedgwick, of Bellaire, Ohio (Ross Michener, of Bridgeport, Ohio, and A. G. Lancione, of Bellaire, Ohio, on the brief), for appellants.

T. J. Kremer, of Woodsfield, Ohio (Arthur L. Limbach, of New Philadelphia, Ohio, on the brief), for appellee.

Before HICKS, ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an action brought by the appellee as receiver of the

First National Bank of Bethesda, Ohio, hereinafter called the Bethesda Bank, against the county treasurer, the county auditor and the county recorder of Belmont County, Ohio. The receiver prayed that certain taxes levied upon the capital stock of the Bethesda Bank and of the Belmont National Bank of Belmont, Ohio, hereinafter called the Belmont Bank, for the taxable years 1928, 1929 and 1930, and certain penalties listed and assessed against the banks, be declared illegal and void; that the county officials be enjoined from collecting or attempting to collect the same, and that an order issue to the auditor of Belmont County, Ohio, instructing him to issue a remitter for the taxes and penalties to the treasurer of Belmont County, Ohio.

Each of the banks had paid-in capital stock of $25,000, represented by 250 shares of $100 par value. In February, 1931, the Bethesda Bank acquired all of the assets of the Belmont Bank and assumed all of its liabilities, and in December, 1932, the Belmont Bank was declared insolvent and a receiver was appointed. Its affairs have been completely liquidated except for the question of taxes involved herein.

The taxes in question are laid under Title 12 U.S.C. Section 548, 12 U.S.C.A. § 548, which permits the several states to tax the shares of national banking associations located within their limits. The pertinent portion of the statute is that the several states may "(1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income * * *." It is also provided that imposition by any state of any one of the above four forms of taxation shall be in lieu of the others. Section 548, par. 1(a). In accordance with this statute, the Ohio Legislature enacted Sections 5408, 5409, 5411, 5412, 5413, 5414, 5672 and 5673, General Code of Ohio, providing for the taxation of shares of banks located within the state, and covering both state and national bank stock. The controlling sections are 5672 and 5673, which read as follows:

"§ 5672. Taxes assessed on shares of stock, or the value thereof, of a bank or banking association, shall be a lien on such shares from the first Monday of May in each year until they are paid.

"It shall be the duty of every bank or banking association to collect the taxes due upon its shares of stock from the several owners of such shares, and to pay the same to the treasurer of the county, in which such bank or banking association is located, as other taxes are paid, and any bank or banking association failing to pay the said taxes as herein provided, shall be liable by way of penalty for the gross amount of the taxes due from all the owners of the shares of stock, and for an additional amount of one hundred dollars for every day of delay in the payment of said taxes."

"§ 5673. Such bank or banking association paying to the treasurer of the county in which it is located, the taxes assessed upon its shares, in the hands of its shareholders respectively, as provided in the next preceding section, may deduct the amount thereof from dividends that are due or thereafter become due on such shares, and shall have a lien upon the shares of stock and on all funds in its possession belonging to such shareholders, or which may at any time come into its possession, for reimbursement of the taxes so paid on account of the several shareholders, with legal interest; and such lien may be enforced in any appropriate manner."

Except for the payment of the first half of the taxes for 1928 by the Bethesda Bank, none of the taxes upon the shares of the respective banks were paid for the years in question and liens upon the real estate of the banks were accordingly perfected in accordance with Section 5694, General Code of Ohio, 114 Ohio Laws, 829. The value of the real estate standing of record in the names of the banks at the time of insolvency was $4,718.87. The real estate acquired by foreclosure and in closing the affairs of the banks amounted to $27,307.72. During each of the years 1928, 1929 and 1930, each of the banks had resources, in addition to the capital of $25,000, consisting of surplus in excess of sixty per cent of its capital and undivided profits, less reserve for current expenses, taxes and interest, in excess of the taxes appearing on the personal property tax duplicate for such years respectively, with respect to its shares. Each of the banks paid to its stockholders in each of the years 1928 and 1929, and the Bethesda Bank paid to its shareholders in each of the years 1930 and 1931, a dividend in excess of the amount of the taxes appearing on the personal property tax

duplicate for such years respectively, with respect to its shares.

In this case the method of calculating the value of the shares for taxation is not questioned and we need not describe it in detail. But the method of listing the taxes is important. In each of the taxable years the taxes upon the shares were entered on the appropriate tax list and tax duplicate opposite the name of each bank. The names of the owners of the stock were not placed upon the tax books with respect to any tax upon their respective shares. This method of listing the taxes had been followed for a number of years during which each of the banks voluntarily paid the taxes and at no time asserted that they were invalid or irregular in any respect. After the taxes for the three years accrued and before they were entered upon the delinquent tax duplicate, each of the banks filed three separate actions in the state court, each action covering one tax-year period, seeking a permanent injunction against the county officials to prevent the collection of the taxes. In each of these cases filed in the state court a temporary restraining order was issued which continued in force until August 13, 1934, when each of the actions was dismissed without prejudice. Each of these petitions alleged that irregularity or infirmity did not exist with respect either to the method in which such shares of stock were assessed or to the manner in which the assessment thereof and the taxes due thereon were entered on the appropriate tax list or duplicate but that the taxes to which the original actions related respectively were invalid solely in that the shares were taxed at a greater rate than other money capital in the hands of individuals and competing financial institutions coming into substantial competition with the business of the bank and not representing merely personal investments.

Thereafter the then receiver of the Bethesda Bank filed an action in the state court on August 8, 1938, seeking authority to sell the real estate of the banks free from the tax liens and asking that "whatever claim or right said Belmont County may have against said banks by virtue of said taxes follow the proceeds derived from the sale of the said real estate in the hands of the receiver."

Hearing was had in this case and the court decreed that the tax lien against the real estate of the banks be cancelled and discharged; that the county officials be enjoined from asserting or attempting to assert a lien against the real estate of the banks; that the receiver be authorized to convey the real estate free from such tax liens and that whatever right or claim the county might have against the bank growing out of the taxes follow the proceeds of the sale of the real estate in the hands of the receiver. No appeal or error proceedings were prosecuted from this judgment.

In the instant case the appellee contends that the taxes are invalid and void. The appellants contend that the appellee is estopped from contesting the validity of the taxes by the institution of the various former proceedings in which validity of the assessment was admitted; that the District Court had no jurisdiction; that the taxes assessed are valid under Ohio and federal statutes, and that the liability for the taxes accruing prior to the insolvency is not altered by the insolvency of the banks.

The District Court held that no estoppel existed. It concluded that the taxes were illegal and invalid because they were certified to the recorder of the county with a ten per cent penalty as if they were assessments directly against the property of the bank and that therefore they were not levied or assessed under the authority of the federal or Ohio statutes. The court concluded that the agency of the banks to make collection of taxes upon their shares of stock under Sections 5672 and 5673, General Code of Ohio, terminated upon the insolvency of the bank; that collection of the taxes would result in direct taxation of the banks' assets, and was therefore illegal. The court set aside the liens, enjoined the county officials perpetually from collecting or attempting to collect the taxes and penalties, ordered the county auditor to issue the remitter prayed for, and ordered the county recorder to cancel and discharge the liens upon the records of the county.

Much argument has been expended by both parties on the question of the validity of the manner of listing the taxes and assessing the penalty against the banks. We do not regard it as of any independent legal significance that a ten per cent penalty for failure to pay the tax promptly was imposed against the banks. If the banks were properly charged with the pay-

ment of the taxes in the first instance, there was explicit statutory direction, when the taxes remained unpaid, to add such a penalty (Section 2657, General Code of Ohio) and to include it in making up the cumulative delinquent tax duplicate which operated as notice of the lien upon the real property of each "person charged" with such taxes and penalties. Sections 5695-1 and 5694, General Code of Ohio.

The appellee relies on Miller, Treas., v. First National Bank, 46 Ohio St. 424, 21 N.E. 860, a decision that is unreversed, as supporting his contention that the taxes were assessed against the bank instead of against the shareholders and were therefore illegal. This case was decided in 1889 at a time when the Ohio statute imposed no duty upon banks to collect taxes on the bank shares. In 1911 the Ohio Legislature amended Sections 5672 and 5673 so as to make it the duty of banks to collect and pay such taxes, and since then no decision of the Supreme Court of Ohio has cited the Miller case. Geller v. McCort, 60 Ohio App. 485, 22 N.E.2d 137, decided in 1938, in a detailed opinion held that taxes assessed and listed in exactly the same manner as the taxes involved herein were valid and the Supreme Court of Ohio overruled a motion to certify this case (60 Ohio App. xliii), and dismissed an appeal filed as a matter of right (135 Ohio St. 190, 19 N.E.2d 955). A similar conclusion was reached by the Ohio Court of Appeals for the Second Judicial District, Niswonger v. Bowers, 26 Ohio L.Abs. 438. Cf. Niswonger v. Bowers, Ohio App., 36 N.E.2d 994; Hoenig v. Huntington National Bank, 6 Cir., 59 F.2d 479. We are informed that subsequent to the decision of the Geller case, certain other actions were tried which were filed by national banks of St. Clairsville and of Bellaire, Ohio, against the officials of Belmont County which questioned the validity of taxes similar to those involved herein. In those cases an intermediate appellate court of the same authority as that which decided the Geller case, by a two to one decision held that taxes upon bank stock listed as in the instant case were invalid. This decision is embodied in a docket entry which does not discuss the legal questions and merely cites as authority the Miller case, supra. In view of the substantial change in the statute, the decision in the Niswonger cases, supra, and the rule adopted in the Geller case, supra, which the Supreme Court of Ohio refused to review, the present weight of authority in Ohio upon the validity of the assessment supports the appellants. However no federal court can with certainty adjudicate the question of what the law of Ohio is upon this particular point until the Supreme Court of Ohio has ruled directly upon the effect of the existing statutes, and we do not rest our decision upon this ground.

In our view, the controlling question before this court is whether the appellee is entitled to the equitable relief for which he prays. This requires some detailed consideration of the collection procedure set up by the Ohio statutes. At the time the Miller case, supra, was decided, the applicable state statute, Section 2839, Ohio Revised Statutes, provided that in case of the nonpayment of such taxes "by any shareholder," it should be unlawful for any bank to permit such shares to be transferred until the taxes thereon were paid in full and that no dividend should be paid on any stock so delinquent so long as such taxes remained due and unpaid. The amendment of 1911 altered the statute, making it the duty of every bank to collect the taxes from its shareholders and pay the same to the county treasurer, and provided, among other things, that any bank failing to pay the taxes should be liable for the gross amount of the taxes due from all the owners of the shares of stock. 102 Ohio Laws, 91. These statutes were enacted under the authority of Section 5219, United States Revised Statutes. Since the amendment of March 4, 1923, Section 5219 has expressly provided that with respect to the shares owned by non-residents of the state, the bank "shall make return of such shares and pay the tax thereon as agent of such nonresident shareholders." Title 12 U.S. C. Section 548, 12 U.S.C.A. § 548. In order to prevent discrimination between resident and nonresident shareholders (First National Bank v. Commonwealth, 76 U.S. 353, 363, 9 Wall. 353, 19 L.Ed. 701; Tappan, Collector, v. Merchants' National Bank, 86 U.S. 490, 504, 19 Wall. 490, 22 L.Ed. 189), it was legal and proper that the Ohio statute should impose this same duty of collection with reference to shares of resident stockholders.

Under a uniform line of decisions, it was for the State Legislature to decide the method in which the tax should be col-

lected. First National Bank v. Commonwealth, supra; Tappan, Collector, v. Merchants' National Bank, supra, at page 499 of 19 Wall., 22 L.Ed. 189. Cf. Davenport Bank v. Davenport Board of Equalization, 123 U.S. 83, 85, 8 S.Ct. 73, 31 L. Ed. 94, which held that in absence of discrimination the manner of assessing and collecting all taxes by the states is uncontrolled by the Act of Congress. The provision of the Ohio statute that the banks should collect and pay the tax is valid. Merchants & Manufacturers' Bank v. Pennsylvania, 167 U.S. 461, 17 S.Ct. 829, 42 L.Ed. 236. Its validity is not affected by the fact that the obligation to pay the tax is primarily imposed upon the banks. First National Bank v. Commonwealth, supra; Aberdeen Bank v. Chehalis County, 166 U.S. 440, 17 S.Ct. 629, 41 L.Ed. 1069; Title 12 U.S.C. Section 548, 12 U.S.C.A. § 548. The Ohio statute was evidently drafted in accordance with the established doctrine that while the bank is required primarily to pay the tax on the shares, the payment is on behalf of the stockholders where the bank is accorded ample means of enforcing reimbursement from them. Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191.

From the background of the clearly valid provision of the Ohio statute (Section 5672), which imposed the duty of collection upon the banks, we proceed, therefore, to consider whether the appellee is entitled to relief therefrom in a court of equity. The equities as disclosed by the findings and by the uncontroverted facts of the case weigh heavily against the appellee, who brought this action. During each of the taxable years the bank stock had substantial value, and during each of these years dividends exceeding the aggregate amount of the taxes for such year were paid to the shareholders by the banks. Having failed to perform their statutory duty of collecting the taxes, the banks then proceeded to enjoin enforcement of the consequent obligation to which their own dereliction had made them subject. The rule that he who comes into equity must come with clean hands is clearly applicable. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293; Sisler, Aud., v. Foster, 72 Ohio St. 437, 74 N.E. 639. Moreover, not until 1939 did either of the banks in any way question the legality of the manner of assessment of these taxes. In each of the six actions prosecuted during the years 1929, 1930, and 1931, in which orders were obtained restraining the county officials from any action with respect to such taxes, it was expressly conceded that irregularity or infirmity did not exist with respect either to the method in which such shares of stock were assessed or to the manner in which the assessment thereof and the taxes due thereon were noted on the appropriate tax list or duplicate. The claim was that the taxes were invalid solely in that the bank shares were taxed at a greater rate than other money capital coming into substantial competition with the business of the bank. Appellant contends that the receiver was precluded from occupying inconsistent positions in the state court and in this court (Hedland v. Lones, 128 Ohio St. 68, 190 N.E. 214; Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578), and also points out that neither of the banks pursued the administrative remedies afforded by the Ohio statutes, Sections 5580, 5597, 5609 to 5611, inclusive, 5624-10, General Code, for the correction of erroneous assessments. We agree with appellant that this change of position on the part of the banks has substantially injured the county. It was enjoined for several years from taking action with reference to these taxes as they fell due. If the method of assessment had been attacked in the six original actions, and found illegal, the county, by application to the proper administrative authorities, might well have altered its method of listing. Even the proceedings filed in 1938 for the purpose of selling the bank's real estate free from liens did not attack the legality of the proceedings, but prayed in substance that the liens be fastened on the proceeds of the sale of the real estate. No appeal or error proceedings were taken by the county following the order of the court allowing the sale of the real estate free of the liens for the court's order remitted the county to the proceeds of the sale and the county was not called upon as a practical matter to protest the order because it was not injured thereby.

We know of no theory of law, or equity under which subsequent insolvency can be said to discharge the liability of the banks which had fully matured theretofore. Scott v. Armstrong, 146 U.S. 499, 510, 13 S.Ct. 148, 36 L.Ed. 1059; Merrill v. National Bank of Jacksonville, 173 U. S. 131, 147, 19 S.Ct. 360, 43 L.Ed. 640.

That the banks were under a duty to pay the taxes even though not collected from the shareholders made the obligations no less valid regardless of liquidation proceedings. Cf. United States v. State of New York, 62 S.Ct. 712, 86 L.Ed. ——, decided March 2, 1942; City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333.

The failure of the banks to perform their statutory duty had a direct relation to the controversy brought before this court for adjudication. Keystone Driller Co. v. General Excavator Co., supra, 290 U.S. at page 245, 54 S.Ct. 146, 78 L.Ed. 293. Since the banks, by violating a valid state law, created the situation from which the appellee, their receiver, seeks relief, a court of equity will not intervene to enable him to avoid the consequences of that violation, and a clear case is established calling for denial of the relief sought in the petition.

Appellants' first counterclaim prays for a judgment for the amount of the unpaid taxes with interest. This question cannot properly be adjudicated in this court until the validity of the assessment has been determined in the Ohio courts. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971. The second counterclaim prays for judgment upon the undertakings filed by the appellee in each of the six original injunction actions to secure the appellants for the damages which they might sustain if it was finally decided that the restraining order ought not to have been granted. This question was not adjudicated upon the merits, and its disposition may well be affected by the decision in the state court as to the validity of assessments such as those presented herein. We therefore remand the counterclaims to the District Court with instructions to retain the causes therein presented pending a determination of the cases of Union Savings Bank, Bellaire, Ohio, et al. v. Pancoast, Treasurer, et al., which we are informed have been certified to the Supreme Court of Ohio because of conflict. Cf. Railroad Commission of Texas v. Pullman Co., supra; City of Chicago v. Fieldcrest Dairies, Inc., 62 S.Ct. 986, 86 L.Ed. ——, decided April 27, 1942.

The decree is reversed, the petition is dismissed, and the counterclaims are remanded to the District Court for proceedings in accordance with this opinion.