## In re BURTON COAL CO. et al.
### No. 69296.

District Court, N. D. Illinois, E. D.

Oct. 24, 1944.

362

John J. Dowdle, of Chicago, Ill., for Fred A. Burton.

Thomas B. Hart, of Chicago, Ill., for Securities and Exchange Commission.

Henry S. Blum, of Chicago, Ill., for Material Service Corporation and Continental Illinois Nat. Bank & Trust Co.

J. Roy Browning, of Chicago, Ill., for Trustee.

Victor E. LaRue, of Chicago, Ill., Special Master.

CAMPBELL, District Judge.

This matter comes on to be heard on the petition of Fred A. Burton, charging a conspiracy among the three respondents, J. Roy Browning, reorganization trustee, Material Service Corporation, and The Continental Illinois National Bank and Trust Company of Chicago, to deprive him of alleged interests in the debtor companies, and praying, among other things, that the order confirming the plan of reorganization be vacated and that Burton be permitted to establish his position as the sole stockholder of Burton Coal Company.

On September 7, 1938, separate involuntary petitions for the reorganization of Burton Coal Company and of its two subsidiaries, Freeman Coal Mining Company and Seymour Coal Mining Company, were filed under Section 77B, 11 U.S.C.A. § 207, and were approved on September 9, 1938, on which date the late Judge Woodward named J. Roy Browning trustee of the debtors. Since the approval order was entered within three months prior to the effective date of Chapter X, the provisions of that Chapter are applicable. Section 276, sub. c(1), 11 U.S.C.A. § 676, sub. c(1). The trustee presented a plan of reorganization dated January 15, 1942, which was ultimately confirmed by Judge Woodward on March 27, 1942. In accordance with the provisions of this plan, the Freeman Coal Mining Corporation, organized for the purpose, took over the assets of the debtors and issued its securities therefor. By October 1, 1942, the plan was entirely consummated.

On October 29, 1942, Fred A. Burton asked leave to file his petition. It alleges that Burton is entitled to all the common stock and preferred stock of Burton Coal Company but that he was deprived of it through the action of respondents, and that the stock was improperly excluded from participation in the plan since no insolvency finding was made by the Court. The petition further alleges that the Continental Bank sold to Material Service Corporation all interest in its claim of some $370,000 against the debtors, and attacks the sale as having been made through the "cooperation" of the Bank and the trustee and without the knowledge of Burton. The petitioner also states that purchases made by Material Service Corporation of other claims against Burton Coal Company should be nullified because the original claimants were deceived into disposing of their claims at a low price. Burton further alleges that the trustee should not have transferred the assets to a new corporation, as provided in the plan, but should have continued to operate the business until the debts were liquidated, after which the property would have reverted to him as sole stockholder.

As to the common stock of Burton Coal Company, the petitioner had caused it to be issued to himself and each of four employees in equal shares. Shortly before the filing of the petitions for reorganization herein, the Continental Bank discovered that a large number of accounts receivable, previously pledged by Burton Coal Company to secure loans of money from the Bank, were spurious. Thereupon the petitioner, on behalf of Burton Coal Company, assigned all of such common stock to the Bank as further security for the indebtedness of the company to the Bank. The validity of the Bank's lien upon this stock, arising out of the assignment, has been established by order of Court affirmed on appeal. In re Burton Coal Company, 7 Cir., 1942, 126 F.2d 447.

During the course of these proceedings, pursuant to notice to petitioner and to the four employees of the Burton Coal Company in whose name the common stock was registered, the Continental Bank sold said stock at public sale to Material Service Corporation for $25.00. It is contended that this stock in the hands of the Bank was not subject to sale and also that Material Service Corporation, having purchased the Bank's interest in the claim which the stock was pledged to secure, became the pledgee of the stock and subject to the rule that a pledgee may not be the purchaser at a sale of his collateral. This stock through assignment was pledged by petitioner to secure the indebtedness of the Burton Coal Company to the Bank evidenced by certain notes each containing express provisions permitting the sale of the collateral and authorizing the holder to purchase the collateral at a sale. Such provisions are not unlawful. Hiscock v. Varick Bank, 1907, 206 U.S. 28, 27 S.Ct. 681, 51 L.Ed. 945, affirming In re Mertens, 2 Cir., 1906, 144 F. 818; Bush v. Adams, C.C.S.D.N.Y.1908, 165 F. 802; Turner et al. v. Metropolitan Trust Co., 9 Cir., 1913, 207 F. 495; Shafer et al. v. Spruks et al., 3 Cir., 1915, 226 F. 922.

As to the preferred stock, petitioner had deposited it to secure his personal note to the Bank in the amount of $157,097 and the Bank sold this stock, also to Material Service Corporation, after notice to petitioner. This sale of the collateral similarly would appear valid under the equally broad provisions of sale contained in the note secured thereby.

The petitioner, therefore, had no interest as a stockholder in the proceedings.

With respect to the exclusion of the stock from participation in the plan of reorganization although no specific finding of insolvency was made, it appears that petitioner had lost his stock interest by the sale of the security and stands in no position to complain. The Court did have before it certain evidence indicating that the debtors were insolvent. At the hearing on the plan apparently no attempt was made to establish a valuation of the enterprises on the basis of reasonably prospective earnings, and a timely objection to the approval or confirmation of the plan on this ground might properly have been interposed. Consolidated Rock Products Co. v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982. However, the failure to raise this issue until after the plan had been approved by Judge Woodward, after his order of confirmation had become final, and after consummation of the plan, precludes the Court from considering it now. In re Utilities Power & Light Corporation, 7 Cir., 1942, 125 F.2d 343; Clinton Trust Co. v. John H. Elliott Leather Co., 2 Cir., 1942, 132 F.2d 299.

The contention that the sale of the Bank's claim to Material Service Corporation should be set aside appears to be based upon the allegation that the transaction was effected through the "cooperation" of the Bank and the trustee and upon an implication of collusion and fraud arising from the fact that the petitioner did not have knowledge of the sale. The trustee's testimony that he knew nothing of the transaction until after its completion is unchallenged by the evidence; an obligation to inform petitioner of the sale was not established; and, as between the Continental Bank and Material Service Corporation, in the absence of evidence of fraud or breach of fiduciary relationship, there would appear to be no ground for disturbing the completed transaction. Texas Hotel Securities Corp. v. Waco Development Co., 5 Cir., 1936, 87 F.2d 395. Cf. In re Page Motor Car Company, D.C.Mass.1918, 251 F. 318. Moreover, since the charge of fraud is a serious one, general averments and innuendo constitute insufficient allegation thereof. Zaring v. Strauss & Co., 9 Cir., 1929, 30 F.2d 313; Blakeslee v. Wallace, 6 Cir., 1930, 45 F.2d 347. And when fraud is alleged, the proof thereof must be

clear, unequivocal and convincing. Mescall v. W. T. Grant Co., 7 Cir., 1943, 133 F.2d 209. I am unable to find in the record in this case, or in the offer of proof, any clear and convincing indications of fraud.

■ Petitioner asks that the claims purchased by Material Service Corporation from other creditors be reinstated in the various names of such creditors upon return of the purchase price, upon the ground that such creditors were deceived as to the value of their claims through the trustee's unwarranted expenditures in rehabilitating the Freeman Mine and through his employment of improper accounting methods which charged capital expenditures to current expense and depressed current earnings on the books. The evidence discloses that the additional coal supply made available through the expenditures complained of was necessary to supplement the production at the Seymour Mine, and that petitioner himself approved of the undertaking at the time. The record further shows that the trustee's accountants, experienced in the coal mining field, explained and justified their methods and were in no wise contradicted. Lastly, it is not shown that any such creditors relied on the books or are complaining of any deception practiced upon them.

■ As to the proposal that the trustee should have continued to operate the business until the debts were liquidated, it has been repeatedly stated that reorganization proceedings "must never be viewed as nursing receiverships." In re Chicago, R. I. & P. R. Co., 7 Cir., 1934, 72 F.2d 443, 452; In re Utilities Power & Light Corporation, 7 Cir., 1937, 91 F.2d 598, 602. Moreover, a continued operation of the business would not have benefited petitioner since, as indicated above, he has no stock interest.

■ Petitioner charges that he was fraudulently deprived of his creditor interests in the subsidiaries, that the claim of the Continental Bank contained a duplication of items and was therefore partly fictitious, and that the Bank misapplied a portion of the money in the sinking fund. These charges need not be further considered. Not only did the petitioner fail to substantiate them, they are refuted by the evidence introduced on behalf of the respondents.

■ Petitioner urges in his brief a point, not stated in his petition, which might nevertheless deserve mention. He claims that the trustee, in failing to demand of him the transfer to the trustee of certain coal lands standing in his name, was guilty of fraud which decreased the value of his assumed stockholder position to the extent that the assets of the estate would have been enhanced by the acquisition of the land. It appears from the evidence that petitioner informed the trustee that he had purchased the land with family funds, and that the trustee refrained from suit in reliance thereon. After consummation of the plan, the reorganized company filed suit against petitioner to recover the land upon the strength of subsequent investigation which revealed the corporate character of the funds employed in its purchase. Thus fraud is imputed to the trustee for failure to disbelieve petitioner. Obviously petitioner does not appear before the Court with clean hands. Keystone Driller Co. v. General Excavator Co., 1933, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293; Findley v. Odland, 6 Cir., 1942, 127 F.2d 948. See also American Ins. Co. v. Scheufler, 8 Cir., 1942, 129 F. 2d 143.

■ Neither the record as made nor the offers of additional proof establish a basis for reconsideration of a final order or decree such as the order of confirmation in this case from which no appeal was taken. In Moffett v. Robbins, 10 Cir., 1936, 81 F. 2d 431, 435, the Court states: "But such relief will be granted only upon fraud extrinsic to the matters tried and determined by the other court and which caused the court to render a wrong judgment, such as the successful party through fraud or deception preventing the unsuccessful from presenting his case, or from attending the trial, or where his attorney was induced to betray his client's interest, or other chicanery of that kind." See also In re Fox West Coast Theatres, 9 Cir., 1937, 88 F.2d 212, 225.

When Burton's petition was presented, the motion for leave to file it was referred to the Special Master heretofore appointed by Judge Woodward herein. The Master's report was adverse to petitioner. However, this Court determined that the nature of the charges warranted further careful consideration and accordingly granted leave to file the petition and at the same time requested the Securities and Exchange Commission to file its appearance in the proceeding and conduct an investigation. The Commission thereupon made a study of the record and submitted a written memorandum which was also adverse to the

petitioner. The hearing before the Special Master upon the motion for leave to file the petition and answers in opposition thereto was lengthy, and every opportunity was afforded the parties to introduce oral testimony and documentary evidence. I have carefully considered the testimony and exhibits in evidence, as well as the additional offers of proof tendered by petitioner, and for the reasons stated herein I conclude that the relief requested should not be granted.

Accordingly, it is ordered that the said petition of Fred A. Burton be and the same is hereby denied.