Dr. John I. REDDIX

v.

Mrs. Mae LUCKY, Registrar of Voters, Ouachita Parish.

Civ. A. No. 5733.

United States District Court
W. D. Louisiana, Monroe Division.

Feb. 11, 1957.

James Sharp, Jr., Monroe, La., for plaintiff.

Fred Fudickar, Jr., Monroe, La., Albin P. Lassiter, Dist. Atty., Ouachita Parish, Monroe, La., Jack P. F. Gremillion, Atty. Gen., State of Louisiana, George M. Ponder, First Asst. Atty. Gen., State of Louisiana, William C. Bradley, and Kenneth C. Banfield, Jr., Sp. Counsel to Atty. Gen., State of Louisiana, for defendant.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

### Ruling on Motion to Dismiss

We have studied the record, the repective briefs and authorities cited, and have arrived at the following conclusions:

### Findings of Undisputed Facts

1. On April 26, 1956, plaintiff, a Negro, was a registered voter in Ouachita Parish, Louisiana, at which time defendant was the Registrar of Voters for that Parish. She has continued in office as such to the present time.

2. On that date, Wesley Burdine and John J. Feeback, registered voters in the Parish, filed an affidavit with defendant challenging the validity of plaintiff's voter registration, pursuant to the provisions of Louisiana Statutes Annotated–Revised Statutes 18:133. This challenge was *not* made by defendant.

3. Immediately upon receiving the challenge, defendant mailed the original of it to plaintiff, at the address listed on his registration card, together with the citation provided for by the Statute. Plaintiff undoubtedly received this in the regular course of mail, for he does not make contrary allegations in his complaint or counter-affidavit.

4. Plaintiff thereby was notified to appear in person before the Registrar, or her Deputy, within ten days, in order to prove his right to remain on the registration rolls, or suffer his name to be erased from them.

5. In accordance with LSA–R.S. 18:132 and 133, defendant also caused notice of this and a number of other challenges to be published in the "Monroe News Star", a daily newspaper published in the Parish, on May 10 and 11, 1956. This publication gave further notice to plaintiff, and the other voters whose registrations had been challenged, as required by the Statute, to appear at defendant's office, and "* * * prove the correctness of their registration as provided by law within ten days from the date of notice or three days from date of last publication, whichever is later".

6. Plaintiff did not appear at defendant's office, in order to meet the challenge and prove the correctness of his registration, until 10:30 A.M. on May 15, 1956, which was more than ten days after the notice was mailed to him and more than three days following the date of the last publication caused to be made by defendant in the newspaper. Meantime, defendant's office had been kept open for transaction of its busi-

ness from the date the notice was mailed, except on Sundays. The office was open from 8:00 A.M. to 5:00 P.M. on those dates, and also on May 12 and 14, 1956, but was closed on May 13, 1956, which was a Sunday.

7. On May 15, 1956, when plaintiff appeared at defendant's office, the registration rolls were closed to new registrations of voters because of a Democratic municipal primary election scheduled to be held on May 22, 1956, the rolls having been closed since April 21, 1956, in accordance with LSA–R.S. 18:-170, which required such closing thirty days prior to any primary or general election.

8. Thereafter, the registration rolls in defendant's office were open for new registrations from May 23 to June 30, 1956, when they again were closed because of a Democratic congressional primary election to be held on July 31, 1956. They remained closed after that election until August 15, 1956, because of a local tax election, held on August 14, 1956. Following this, the books were open for new registrations until October 5, 1956, when they again were closed because of the National general election to be held on November 6, 1956. They were reopened on November 7, 1956, and have remained open every day, except Sundays and holidays, since that date.

9. Since May 23, 1956, approximately 1500 Negroes have appeared at defendant's office and either have qualified and were registered to vote or were found not qualified. On November 6, 1956, there were 956 registered Negro voters in the Parish.

10. At no time since May 15, 1956, has plaintiff appeared at defendant's office and requested to be reregistered. However, on August 24, 1956, his wife, Mrs. Frances Pierce Reddix, registered and became qualified to vote in Ouachita Parish.

11. Nowhere in his complaint or affidavit does plaintiff allege that defendant caused or permitted his voter registration to be challenged in contravention of LSA–R.S. 18:132 and 133 or in an unconstitutional manner solely because of his race. Rather, plaintiff's allegation is to the effect that the persons —not defendant—who made the challenges of plaintiff's and other Negroes' registrations, did so " * * * wholly and solely on the basis of race". He does not allege that defendant was a party to any conspiracy respecting these challenges. The only charge plaintiff makes directly against defendant, in this respect, is that she " * * * mailed more challenges than her office could accommodate and hundreds of Negroes never got into her office to answer the challenge".

12. Plaintiff does not contest the constitutionality of the Louisiana Voter Registration Law; nor does he allege that it is discriminatory or that defendant has administered the law in a discriminatory or unconstitutional manner, either willfully or otherwise. Nevertheless, he seeks a declaratory judgment, an injunction and damages from defendant. Defendant has filed a motion to dismiss.

### Conclusions of Law

1. Under Rule 12, Fed.Rules Civ.Proc., 28 U.S.C.A. defendant's motion to dismiss, as enlarged by her affidavit, should be treated as a motion for summary judgment, under Rule 56. The injunctive and declaratory judgment features should be considered on the pleadings and affidavits, Rules 65 and 57. Thus considered, we find from the pleadings and affidavits on file that there are no genuine issues of material fact presented by this record. Consequently, the motion for summary judgment properly should be granted or denied on the record as it stands, without a trial.

2. Under LSA–R.S. 18:133, defendant was required to accept the affidavit of Burdine and Feeback, challenging plaintiff's registration. She legally could not have refused to accept it.

3. Likewise, under that Section of the Statute, she legally was required to notify plaintiff, and the others whose registrations were challenged, by mail and by publication, as she did.

4. Her duties in all these respects were mandatory, not discretionary; and she was compelled to do precisely what she did, no matter how many challenges were filed, notwithstanding that she might have anticipated such action would overtax the facilities of her office, so as to make it difficult or even impossible to handle all responses to challenges expeditiously.

5. Since plaintiff did not present himself at defendant's office, to answer the challenge against his voter registration, within ten days from the mailing of the written notice to him, or within three days after the last publication caused to be made by defendant, she then had no choice under the State law but to deny his application to answer the challenge, and she had to cancel his registration. Moreover, she legally could not have allowed him to effect a new registration on May 15, 1956, since the books then were closed for that purpose because of the primary election scheduled for May 22, 1956, LSA–R.S. 18:170.

6. In substance, therefore, all plaintiff has alleged here is that defendant followed the State law to the letter. The Statute is not unfair on its face. Plaintiff has not made a substantial claim that defendant administered it in a discriminatory manner. Even if such an allegation were made, absent a further claim by plaintiff that defendant did so as a purposeful discrimination against his rights, he cannot obtain a declaratory judgment or an injunction, nor can he recover damages from her. A discriminatory purpose is never presumed. It must be expressly alleged and shown. As stated by the Supreme Court of the United States in Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 401, 88 L.Ed. 497:

"The unlawful administration by state officers of a state statute fair on its face resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful discrimination.* * * * *But a discriminatory purpose is not presumed,* Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S. Ct. 402, 403, 47 L.Ed. 572; *there must be a showing of 'clear and intentional discrimination',* Gundling v. City of Chicago, 177 U.S. 183, 186, 20 S.Ct. 633, 635, 44 L.Ed. 725; see Ah Sin v. Wittman, 198 U.S. 500, 507–508, 25 S.Ct. 756, 758, 759, 49 L.Ed. 1142; Bailey v. State of Alabama, 219 U.S. 219, 231, 31 S.Ct. 145, 147, 55 L.Ed. 191. * * *". (Emphasis supplied.)

7. Plaintiff's lack of good faith, in applying here for a declaratory judgment and an injunction—equitable and discretionary remedies—is shown plainly by his deliberate failure to seek reregistration since May 15, 1956, although he could have done so at any of the times the registration rolls have been open. His bad faith—his sheer stubborn vindictiveness—is doubly demonstrated by the fact that his wife applied for and actually was granted registration, as did a large number of other Negroes, but he willfully has refused to do so. He apparently prefers litigation to registration. In exercising the sound discretion with which Courts of equity are vested, we find that declaratory or injunctive relief should not be granted in such circumstances. 30 C.J.S., Equity, § 93; American Insurance Company v. Lucas, 38 F.Supp 896, affirmed American Ins. Co. v. Scheufler, 129 F.2d 143, certiorari denied 317 U.S. 687, 63 S.Ct. 257, 87 L. Ed. 551; Ford v. Buffalo Eagle Colliery Company, 4 Cir., 122 F.2d 555; Findley v. Odland, 6 Cir., 127 F.2d 948; Austin v. Texas-Ohio Gas Company, 5 Cir., 218 F.2d 739.

8. In the same respect, another serious defect in plaintiff's suit is that, at best, it is decidedly premature. He has not exhausted the administrative remedy, available to him, by attempting to reregister. We are aware, of course, that the Fifth Circuit Court of Appeals has held, in Hall v. Nagel, 154 F.2d 931, that the procedure provided for by the Louisiana Constitution, Article 8, Section 5, LSA, and by LSA–R.S. 18:138, for appeals from a Registrar's denial of voter registration, is a judicial, not an administrative, remedy, not required to be exhausted before bringing an action for wrongful discrimination in a Federal court. That decision does not hold, however, that a person who wishes to register is exempt, simply because he is a Negro, from taking the first and only administrative step, namely, requesting the Registrar to permit him to register at a time when such legally may be done. In our opinion, he must do this, at least, before he may have any standing in a Federal court to complain that his Federal rights have been discriminated against. Carson v. Board of Education of McDowell County, 4 Cir., 1955, 227 F.2d 789; Hood v. Board of Trustees of Sumter County School District, 4 Cir., 1956, 232 F.2d 626; Peay v. Cox, 5 Cir., 1951, 190 F.2d 123.

9. Moreover, plaintiff may not sue to recover damages from defendant in this Court. She merely obeyed her duty under the State law and cannot be held civilly liable for this, here or elsewhere. Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780. In Dinwiddie v. Brown, 5 Cir., 230 F.2d 465, 469, the Court said:

"This is not to deny that if state officers conspire with private individuals in such a way as to defeat or prejudice a litigant's rights in state court, that would amount to a denial of equal protection of the laws by persons acting under color of state law. *It is another matter, however, where they act wholly within their official responsibilities and do not intentionally cooperate in any fraudulent scheme. In such a case, the tort is solely that of the private individuals, and redress of the wrong rests with the state courts.* Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253." (Emphasis supplied.) See also, to the same effect, McGuire v. Todd, 5 Cir., 198 F.2d 60.

10. Plaintiff may not maintain this suit as a class action, under Rule 23(a), Fed.Rules Civ.Proc., because his civil rights have not been violated by defendant, and he thus may not sue vicariously for violations, if any, of the civil rights of others. Brown v. Board of Trustees of LaGrange Ind. Sch. Dist., 5 Cir., 187 F.2d 20; Martinez v. Maverick County Water Control & Imp. Dist. No. 1, 5 Cir., 219 F.2d 666.

11. If Burdine and Feeback wrongfully challenged plaintiff's registration, they may be held liable to him in a State court action, but that claim may not be brought in this Court. They acted merely as individuals, not as officers of the State; and this Court would not have jurisdiction of such a claim. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253.

12. For these reasons, defendant's motion for summary judgment could be granted now and the suit dismissed. However, we are not constrained to take such action at this time, because we are impressed that LSA–R.S. 18:132 and 133 may have been misused against plaintiff, in an unfair manner, not by defendant but by Burdine and Feeback, and possibly by them or other challengers against other Negroes in Ouachita Parish. This statement is based particularly upon the timing of the challenges, just prior to an election, when the books were closed for new registrations. We also are impressed with the fact that, although defendant had no alternative under the State law but to accept the challenges and proceed exactly as she did, such a large number of challenges were made that many of the

persons whose registrations were challenged were unable to be served properly by defendant's staff before the legal delays expired.

13. It does not lie within our province even to suggest it, but, in order to insure that this type of conduct, and the possibly unfair results which attended it, will not happen again, it seems to us that the Louisiana Legislature might amend the registration Statute so as to provide that no challenges may be made later than thirty days prior to an election; and to make challengers civilly liable in damages to voters whose registrations are challenged by them without adequate reasons. This is not to say that the Statute, as presently written, is unfair, for it is not. This is to say, however, that it can be used unfairly by challengers, as appears to have been done here.

14. Accordingly, in the exercise of our equitable discretion we will defer ruling upon defendant's motion for a period of sixty days from this date, and will retain jurisdiction during that time. If plaintiff justifiably can and does file an amended and supplemental complaint in this action within that delay, alleging *on oath* that he has attempted to reregister as a voter in Ouachita Parish, Louisiana, and has been denied the right to do so *by defendant or her deputy*, solely on account of his race, then we will order a trial on that issue to determine the true facts, and thereafter will rule upon the record as thus presented. If plaintiff does not file such a supplemental and amended complaint within that delay, we then will be entitled to assume 1) that he has succeeded in reregistering, or 2) that he has not been discriminated against solely on account of his race, or 3) that he has not attempted to reregister, and thereby has waived his claims herein. Defendant's motion for summary judgment then will be granted and the suit dismissed. There is ample precedent for this procedure being utilized in so-called civil rights cases, as a matter of comity, in order to avoid a needless clash between State and Federal authority. See Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119, 124; Brown v. Rutter, D.C.W.D.Ky., 1956, 139 F.Supp. 679; and authorities therein cited.